(No. 40523.—

The Chicago Park District, Appellee, *vs.* Vernon C.
Lyons, Appellant.

*Opinion filed May 29, 1968.*

S. T. Sutton, of Elmhurst, (Charles P. Kal and Vincent L. Knaus, of counsel,) for appellant.

David S. Kerwin, General Attorney, Chicago Park District, Eugene E. Dechter, Assistant General Attorney, Chicago Park District, Thomas M. Thomas, Gordon H. S. Scott, and Kirkland, Ellis, Hodson, Chaffetz and Masters, all of Chicago, for appellee.

Mr. Justice Underwood delivered the opinion of the court:

Reverend Vernon Lyons of the Ashburn Baptist Church of Chicago was found guilty by a jury of violating section 17—11 (littering), chapter 17, of the Chicago Park District Code and fined $25. He appeals directly to this court alleging the ordinance to be violative of the first and fourteenth amendments to the United States constitution and sections 2 and 4 of article II of the constitution of Illinois.

Defendant admits that he, four of his own children, and two other members of his church, under his direction, were distributing small paper pamphlets containing the biblical book "The Acts of the Apostles" by placing them under the windshield wipers of cars, or upon the seats of cars with open windows, parked in the Chicago Park District's Monroe Street parking lot. The defendant apparently paid the parking-lot fee and drove into the lot solely for the purpose of distributing this literature. While the evidence is not precise on this point, the capacity of the parking lot is about 3,000 cars, and the implication of the testimony is that there were large numbers of cars parked there at the time the pamphlets were distributed. A fair summary of the balance of the testimony, which was largely undisputed, is that defendant was informed by the officers and assistant manager of the parking lot that he could not distribute his pamphlets in the lot as was being done, that he was free to leave without being arrested, and that he

could stand on the sidewalk outside the lot entrance and pass the pamphlets to people as they entered or left the lot. At the time the officers talked to defendant in the lot, there were a number of pamphlets on the ground, apparently having been blow there from the cars. Wind velocity was about ten miles per hour with gusts up to twenty miles per hour.

Reverend Lyons refused to distribute the pamphlets outside the parking lot, insisting he was constitutionally privileged to circulate them as he was doing, and indicated his intention to continue. He was thereupon arrested. There was no hint of disorderly or ungentlemanly conduct by any of the participants or officers. Several days after defendant's arrest there were still pamphlets scattered about the parking lot. There is no direct testimony that either defendant or any of the church members actually deposited the pamphlets directly on the ground.

The challenged ordinance is as follows:

"LITTERING

"17—11. No person shall throw, cast, deposit, damage, lay, place or scatter in or upon the park system or any park property or appurtenance any placard, hand-bill, pamphlet, circular, book, notice, paper of any kind, coal, ashes, dust, manure, rubbish, garbage, refuse matter or article, or thing of any kind.

"Any person violating any of the provisions of this chapter, where no other penalty is specifically provided, shall be fined not less than five dollars nor more than two hundred dollars for each offense."

While defendant argues that section 17—11 is unconstitutional on its face, he cites no apposite authority supporting his position, and we think it clear that it is not. No case to which counsel refer, and none which our research has discovered, goes so far as to eliminate the right of public corporations to adopt reasonable regulations designed to maintain publicly owned property in an orderly condition.

Conversely, the opinions of the United States Supreme Court and our court holding void various ordinances restricting the rights of free speech and free press expressly recognize the right of a municipality to regulate reasonably: "The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied." (*Hague* v. *C.I.O.,* 307 U.S. 496, 515-16, 83 L. Ed. 1423, 1437, 59 S. Ct. 954, 964.) "Prohibition of such conduct [throwing literature in the streets] would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion." (*Schneider* v. *State of New Jersey,* 308 U.S. 147, 161, 84 L. Ed. 155, 164, 60 S. Ct. 146, 150.) "Thus the [First] Amendment embraces two concepts,— freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society. The freedom to act must have appropriate definition to preserve the enforcement of that protection. In every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." (*Cantwell* v. *State of Connecticut,* 310 U.S. 296, 303-4, 84 L. Ed. 1213, 1218, 60 S. Ct. 900, 903.) Similarly, our own decisions in *City of Blue Island* v. *Kozul,* 379 Ill. 511, 520, and *Village of South Holland* v. *Stein,* 373 Ill. 472, 478, recognize the right of municipal corporations to adopt regulatory provisions governing the use of public property to the extent that such regulations are compatible with constitutional guaranties of free speech and press.

The ordinance on its face is obviously intended to prevent littering of park district property—a clearly legitimate

objective. It differs decisively from the ordinances held void in *Schneider, Cantwell, Hague, Lovell* v. *City of Griffin,* 303 U.S. 444, 89 L. Ed. 949, 58 S. Ct. 666, *Kozul* and *Stein,* the cases relied on by appellant, in that the terms of those municipal regulations either prohibited speech or the distribution of literature in public places, or required a prior permit to do so from a municipal officer, thereby effectively eliminating or substantially impairing the freedoms of speech and press guaranteed by both State and Federal constitutions. Conversely, the ordinance before us does not purport to prohibit or in any way restrict the right to speak or to distribute written material directly to other persons, and we find no patent constitutional impediment to its enforcement.

We come then to the crux of this case: Are the first-amendment freedoms of speech and press contained in the Federal constitution and by the fourteenth amendment thereof made applicable to the States, and our State constitutional guarantee in section 4 of article II that "Every person may freely speak, write and publish on all subjects" impermissibly impaired by prohibiting defendant from placing religious pamphlets in and upon unoccupied vehicles, without the consent of their owners, in municipally owned and operated fee-parking lots?

Resolution of this question is not entirely free from difficulty, for free speech and a free press are fundamental personal rights and liberties thought by those who drafted our State and Federal constitutions to lie "at the foundation of free government by free men." "[T]he delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights." (*Schneider,* 308 U.S. at 161, 84 L. Ed. at 165, 60 S. Ct. at 151.) It is clear from the cases previously referred to and from the later opinions in *Marsh* v. *State*

*of Alabama,* 326 U.S. 501, 90 L. Ed. 265, 66 S. Ct. 276; *Tucker* v. *State of Texas,* 326 U.S. 517, 90 L. Ed. 274, 66 S. Ct. 274; *Jamison* v. *State of Texas,* 318 U.S. 413, 87 L. Ed. 869, 63 S. Ct. 669; *Talley* v. *State of California,* 362 U.S. 60, 4 L. Ed. 2d 559, 80 S. Ct. 536; and *Louisiana ex rel. Gremillion* v. *N.A.A.C.P.,* 366 U.S. 293, 6 L. Ed. 2d 301, 81 S. Ct. 1333, that substantial impairment of the right to freely distribute ideas in written form is constitutionally intolerable, and that even mildly burdensome regulation thereof is seriously suspect. It is in this light that the Park District ordinance and defendant's activities are to be viewed.

It is readily apparent that placement of pamphlets under the windshield wipers or in the seats of each automobile in a 3000-car parking lot may well result in additional burdens for those charged with responsibility for maintaining the lot in a clean and orderly condition, for it is likely that many, if not most, of such pamphlets will be discarded on the premises by the returning car owners. In fact, the evidence in this case indicates that there were substantial numbers of pamphlets about the parking-lot premises several days after defendant's arrest, apparently having been discarded by car owners or blown from the car windshields. It is further undisputed that there was an undetermined amount of such literature on the parking-lot surface at the time defendant was arrested although it is not clear as to whether these pamphlets had been dropped by the distributors, blown from the cars or discarded. It is further apparent that the presence of unsought and undesired pamphlets in or upon their cars will be a source of annoyance to numerous car owners, necessitating some action on their part in order to dispose of the unwanted literature. And, if defendant's actions are constitutionally immunized from proscription, other similar distributions will be similarly protected. The returning car owner may find himself the unhappy recipient

of a windshield or seat full of unwelcome advertising or other material, to the receipt of which he gave no consent and of which he had no knowledge.

In our opinion adequate protection of the right of an individual to disseminate his ideas or philosophies to others does not necessitate subjecting park districts or the public to these inconveniences, annoyances and burdens. Defendant's right to station himself and his helpers on the sidewalk at or near the parking-lot entrance, and there distribute his literature to all willing recipients as they walked from or to the lot is unquestioned, and this action would have afforded him access to all persons reachable by the methods he actually employed. The lot manager's testimony is undisputed that he urged defendant to do so and that defendant refused, giving as his only reason his belief that he was constitutionally privileged to do as he was doing. It seems manifest to us, however, that neither our own constitution nor the first amendment guarantees of the Federal constitution give individuals the unqualified right to speak or distribute their writings in any manner and at any time or place chosen by them without regard to the consequences to others. *Cameron* v. *Johnson,* 36 L.W. 4319.

Society generally and the inhabitants of any community have, it seems to us, a right to have publicly owned premises maintained in a sanitary and orderly condition. To that end municipal authorities may properly prohibit conduct thereon which violates that right unless the value to society of the proscribed conduct is deemed such as to outweigh the detriment to others resulting from such conduct. The right of an individual to freely speak, write and distribute his writing are among the most important values in our society, and have been zealously guarded by the courts since this country's founding, as noted earlier herein. But they are not absolute, and when alternative methods of distributing literature are available, each of which affords the individual substantially equal opportunities for communication with

others, we believe municipal corporations may constitution-ally restrict the distributor to the method not violative of the rights of others. We therefore hold the ordinance in question constitutional, as applied in the circumstances of this case, for its application neither proscribed nor impaired defendant's right to speak, write or distribute his writings. *Buxbom* v. *City of Riverside* (S.D. Calif.), 29 F. Supp. 3.

Defendant's other claims of error are susceptible to readier resolution. While it is contended that his petition for a change of venue was wrongfully denied, it is apparent that the petition was insufficient on its face to necessitate transfer of the case from Cook County. It alleges in non-factual general terms "that the Court, Civil Administration and Jurors will be prejudiced against him", that "The Church Federation of Greater Chicago, the Roman Catholic Archdiocese of Chicago and Jewish Religious Organiza-tions have formed a group or committee entitled 'The Chicago Conference on Religion and Race'" which has attempted to influence the mayor and others to implement a political, economic and social revolution, and has con-tributed to a breakdown of law and order; that neither de-fendant nor his church subscribe to this philosophy and pe-titioner requests transfer to a "jurisdiction wherein the Chi-cago Conference on Religion and Race has not intimidated and/or manipulated public officials." While verified by de-fendant's affidavit, the petition alleges conclusions rather than facts, is unsupported by other affidavits (see Ill. Rev. Stat. 1967, chap. 146, par. 4), it alleges no prejudice on the part of any specific judge, and is, in our judgment, mani-festly insufficient to require either a change of judges or jurisdictions. We find no abuse of discretion in its denial. 92 C.J.S., sec. 171—c; *Gouker* v. *Board of Supervisors*, 37 Ill.2d 473.

We have examined the jury instructions as to which error is alleged to have been committed and find the trial court's rulings unexceptionable.

Defendant's final argument is that the court erred in permitting the plaintiff Park District to amend its complaint immediately prior to trial by adding the words "did or caused to be done" those things prohibited by the ordinance. While not entirely clear, the argument seems to be predicated upon the absence from the ordinance of the words added by the amendment, and it is contended that the court's action in effect rewrote the ordinance. This argument seems intertwined with the assertion that defendant could not be convicted in the absence of proof that he, personally, deposited pamphlets on the ground or other property owned by the District. Since defendant was accountable whether he used an innocent agent to actually distribute the pamphlets or did so himself (*People* v. *Whitmer,* 369 Ill. 317, 320; see, also, Ill. Rev. Stat. 1967, chap. 38, par. 5—2(c),) and the evidence establishes he did both, the amendment was properly allowed, particularly since no claim of surprise was made and defendant specifically waived any claim to a continuance. Nor do we find merit in defendant's contention that the absence of proof that he or those acting under his supervision and direction actually threw or placed pamphlets on the ground or other Park District property prohibits his conviction. This argument apparently stems from the suggestion in *Schneider* v. *State of New Jersey,* 308 U.S. 147, 84 L. Ed. 155, 60 S. Ct. 146, 151, that responsibility under ordinary "littering" ordinances rested upon the recipient who tossed the literature to the ground rather than upon the distributor thereof. But that suggestion occurred in the context of person-to-person distribution and cannot, in our opinion, be thought applicable to the circumstances of this case. Here the pamphlets were placed upon inanimate objects—the windshields of automobiles—where they would remain for some hours exposed to such moving force as a 10-20 m.p.h. wind might generate. Under such conditions it seems to us clearly foreseeable that some pamphlets would be dislodged and

blown to the ground. That this, in fact, did occur, or that pamphlets were dropped to the ground by defendant or some members of his group is, as previously noted, demonstrated by the testimony that a number of the pamphlets had reached the ground prior to defendant's arrest. In either event and regardless of the characterization of this proceeding as civil, quasi-criminal or criminal in nature, defendant is properly accountable for the known or expectable consequences of his acts or the acts of those directed by him. *People* v. *Johnson*, 2 Ill.2d 165, 172; *People* v. *Marrow*, 403 Ill. 69, 74; *United States* v. *Green* (7th cir.), 246 F.2d 155, 159, *cert.* den. 355 U.S. 871, 2 L. Ed. 2d 76, 78 S. Ct. 122.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*