MICKEY SUZETTE CRICHTON, Plaintiff and Respondent-Appellant, *v.* JOHN TRUE CRICHTON, Defendant and Petitioner-Appellee.

Third District   No. 78-221

Opinion filed August 21, 1979.

Elmo E. Koos, of Peoria, for appellant.

James E. Dixon, of Peoria, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

The Circuit Court of Peoria County entered a decree of divorce on December 30, 1974, dissolving the marriage of the petitioner-husband John True Crichton and the respondent-wife Mickey Suzette Crichton (now Herrmann). The divorce decree awarded the custody of the one child of the marriage, Erin Lee Crichton, a female child age approximately 9 months at the time of the divorce, to the respondent-mother. The divorce decree further provided the father had the right to visit his daughter at all reasonable times and places, provided he first call his ex-wife to make arrangements for such visitation and the right to visit said child on every other national holiday.

John True Crichton petitioned the court to modify the original divorce decree to provide for specific visitation periods to be determined by the court to replace the reasonable-visitation-privileges provision in the divorce decree. The reason for his petition was his ex-wife's refusal to allow him reasonable visitation. Although the petitioner had been exercising some limited visitation with his daughter during three years since the divorce, he had not been allowed overnight visitation with the child, and the thrust of his petition to modify the divorce decree was to compel the respondent to allow overnight visitation on a regular basis,

alleging it was included within the term reasonable visitation as used in the original divorce decree. In reply to the petition, the respondent, Mickey Suzette Crichton, denied that she had refused to allow her ex-husband reasonable visitation privileges, and further alleged under the heading "Affirmative Defenses" that overnight visitation should be denied because the petitioner had "overt propensities which will inure to the detriment of the child." More specifically the respondent referred to the sexual propensities of the petitioner with regard to younger females as evidenced by certain of his attitudes and statements, as well as by certain conduct complained of by his ex-wife.

Following a hearing the trial court granted the petition of John True Crichton setting specified child visitation privileges for him including overnight visitation. The respondent-mother appealed.

On appeal two essential issues have been presented: First, whether the trial court committed reversible error in requiring the respondent to proceed with her proof of the petitioner's misconduct and alleged unfitness when the respondent was not the moving party, and second, whether the granting of the specific visitation to the petitioning father was against the manifest weight of the evidence.

■■ The respondent-mother argues that the trial court erroneously shifted the burden of proof to her when her ex-husband was the petitioner or moving party in this post-divorce child visitation dispute. At the outset we find that no error occurred by this action of the trial court. Although the petitioner in the heading of his petition sought to modify the prior divorce decree, the substance of his pleading is a request for the trial court to interpret the divorce decree provisions to determine whether the overnight visitation privileges he sought were within the meaning of reasonable visitation as used in the divorce decree. Both parties' pleadings and arguments in substance presented as an issue to the trial court whether the overnight visitation which the petitioning father sought was reasonable. By her pleadings and argument the respondent-mother argued additionally as an affirmative defense that her ex-husband was unfit to have the minor daughter on overnight visitations because of his past sexual conduct and stated moral attitudes toward younger females. Pursuant to the Illinois Marriage and Dissolution of Marriage Act, "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health." (Ill. Rev. Stat. 1977, ch. 40, par. 607(a).) Further, "[t]he court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health." (Ill. Rev. Stat. 1977, ch. 40, par. 607(b).) In order to restrict the

petitioning father's visitation rights the trial court would have had to conclude that it would endanger the child, as aforesaid. The respondent alleged that the petitioner's overnight visitation would so endanger their minor daughter in her affirmative defense and reply to her ex-husband's petition. Having made the allegation of endangerment to the child the respondent then had to carry the burden of proving the allegation by a preponderance of the evidence to succeed in restricting the petitioner's visitation rights. We conclude that no error occurred in the trial court ordering the respondent to proceed first with her proof on the petitioner's alleged unfitness for overnight visitation with his daughter.

The respondent's second argument is that the manifest weight of the evidence does not support the trial court's rejection of her contention that overnight visitation be denied. The trial court has broad discretion in adjusting child visitation rights of parties to a dissolved marriage and such discretion should only be exercised with the interest of the child primarily in mind. (*Keefer v. Keefer* (1969), 107 Ill. App. 2d 74, 345 N.E.2d 784.) The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 607(b)) states the standard for the trial court in exercising its discretion as to child visitation to be what will serve the best interest of the child.

The respondent-mother elicited lengthy testimony concerning the petitioner's attitude toward morality, sex and to some degree incestuous relationships. The petitioner, a State-certified school psychologist, also testified and in essence denied any decadent moral tendencies on his part as well as any immoral conduct toward his daughter in the past. Much of the respondent's evidence is irrelevant and cumulative. In summary her only valid complaint of unfitness of her former husband was an incident involving his changing of the child's diaper and his feeling around in her female area. Although respondent placed great significance on this incident, the petitioner denied it. The remainder of the respondent's evidence consisted of testimony intending to reflect adversely on the petitioner's morality and included the details of his alleged extra-marital affair during their estrangement pending the divorce, his taking of nude pictures of respondent, present wife, and others in his position as photo editor of a picture magazine, and statements he allegedly made to others reflecting his immoral propensities in general. In contradiction of this, the evidence offered by the petitioner indicated no demonstrative depravity on his part. In her arguments to us the respondent has erroneously placed great emphasis on cases involving questions of child custody rather than child visitation rights.

■■ In the case of *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164, where similar allegations of the noncustodial parent's

unfitness were made the court correctly summarized the applicable law in stating:

"The welfare and best interests of the child is the paramount consideration in determining whether visitation rights should be restricted and visitation rights will not be restricted merely because the custodial parent considers such restriction to be advisable.

Courts are reluctant to restrict such rights; such reluctance is based on a recognition of the parental feelings of a divorced spouse who has not been granted custody or on the theory that restriction should be limited to cases where extraordinary circumstances are present or where the unfitness of the parent being denied is clearly shown. Broad discretion must be vested in the trial court (*Rodely v. Rodely*, 28 Ill. 2d 347, 350; [192 N.E.2d 347] *Aud v. Etienne*, 47 Ill. 2d 110 [264 N.E.2d 196]), and the right should not be denied unless the court is convinced that the visitations are detrimental to the best interests of the child. The estrangement of parent and child should be avoided whenever possible. *Berger v. Berger*, 344 Ill. App. 557 [101 N.E.2d 620]; 27B C.J.S. Divorce, §312 (1959)." (*Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 167, 356 N.E.2d 164, 170-71.)

In exercising its discretion with regard to child visitation rights the trial court as aforesaid must be guided by section 604(b) of the Illinois Marriage and Dissolution of Marriage Act which provides the standard to be applied in deciding whether visitation rights should be restricted: "The court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotion health." (Ill. Rev. Stat. 1977, ch. 40, par. 607(b).) The past conduct of the petitioner-father and allegations of his immoral propensities failed to indicate any present serious danger to his daughter's physical, mental, moral or emotional health. Under the facts that were presented to the trial court no harm was to be anticipated from allowing the father overnight visitation. The trial court's wide discretion in child-visitation determinations will not be interfered with unless it appears that the discretion has been abused. (*Smith v. Smith* (1962), 36 Ill. App. 2d 55, 183 N.E.2d 559.) We do not believe the trial court abused its discretion in the case at bar.

The respondent has also urged that the remarks and conduct of the trial court evidenced prejudice in the matter of the moral propensities of the petitioner. We have examined the record, and find that although the trial court made various comments in evaluating the evidence, we do not find that those comments had any prejudicial effect on the trial court's decision on the law or as to the lack of detrimental effect of the

petitioner's exercising overnight visitation privileges with his pre-school-age daughter.

For the reasons stated the judgment of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

STOUDER, P. J., and SCOTT, J., concur.