*In re* MARRIAGE OF SHARON KAY LAWVER, Petitioner-Appellee, and RONALD ALLEN LAWVER, Respondent-Appellant.

Third District    No. 79-356

Opinion filed March 21, 1980.

CRAVEN, J., specially concurring.

James J. Elson, of James J. Elson, Chartered, of Canton, for appellant.

Ron Weber, of Froehling, Taylor & Weber, of Canton, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The plaintiff, Sharon Lawver, filed a complaint for divorce on the ground of extreme and repeated mental cruelty when defendant, Ronald Lawver, moved out of the marital home to reside with an unmarried female adult named Mary Jane McCombs. The plaintiff sought an award of maintenance, custody of the parties' only child, Denise Noel Lawver, now seven years old, and child support.

A judgment for dissolution was entered on March 21, 1979. On the same date, the trial court entered a final order providing for property division, maintenance, and child support. Defendant was ordered to pay $35 per week child support and $200 per month maintenance. He received the real estate and equipment associated with the parties' farm and restaurant business. Defendant was permitted visitation with the minor child of the parties as follows: "Visitation shall be one day per alternating weekend upon reasonable notice to petitioner of respondent's intent to exercise visitation. Visitation shall not be overnight and shall be outside the home of one Janie McCombs." He appeals from three aspects of the order: the award of maintenance, the amount of maintenance awarded, and the visitation provisions of the order.

The scant facts of the instant case consist of those undisputed in the pleadings, those contained in a "stipulation" entered into by the parties and in the accompanying financial statement of defendant, and the testimony of the plaintiff at the hearing to establish grounds for dissolution on March 27, 1978.

The parties were married on March 8, 1963. Defendant has worked as a farmer and as a union carpenter, and plaintiff worked as a route accountant for four years of their marriage, until approximately 1972, when she discontinued working to bear the parties' only child. Both parties have completed their high school education. In 1977, the parties acquired an 80-acre tract of land in Putnam County which cost and had a current market value of $35,000 and a current mortgage indebtedness of

$26,192. Defendant also owned, in his own name, a restaurant building in Bryant, Illinois, which was purchased in 1976 for $14,500, and has a current market value of $15,000. The property was being purchased on contract for deed with a balance of $12,500. The parties also owned several items of farm and restaurant equipment which Ronald stated in his financial statement were worth $47,300. The two cars owned by the parties had been repossessed. The total assets of the parties on the date of the financial statement, April 12, 1978, were $98,500. The liabilities of the parties on that date were $130,752. Both parties agree on these total figures, but plaintiff claims that two of the loans constituting a portion of the liabilities, totalling $7,500, are for the benefit of defendant only, and a third loan of $26,000 is owed to Sharon's father. Defendant claims that he lost money during the four years prior to the financial statement.

■■ Defendant contends that the trial court abused its discretion in both the granting of maintenance and in the amount and duration of maintenance. Plaintiff moved to dismiss the appeal on the ground that defendant had accepted the benefits of the decree and is therefore barred by the doctrine of release of errors from appealing those portions of the decree unfavorable to him. A litigant cannot attack a decree if, by reason of enjoying benefits of the decree, the opposing party would be placed in a distinct disadvantage on reversal. *Lemon v. Lemon* (1958), 14 Ill. 2d 15, 150 N.E.2d 608.

In the instant case, this court allowed petitioner's motion to supplement the record on appeal with evidence of financial transactions that the defendant had participated in since the divorce decree. Sharon filed an affidavit in which she, as affiant, stated that defendant had consumated three financial transactions with the property he received in the divorce settlement since that settlement occurred. These transactions are: (1) The sale of 15.011 acres of the 80-acre farm; (2) the remortgage of the remainder of the farm to obtain a $28,700 loan; and (3) the sale of his interest in the restaurant in Bryant. Plaintiff attached to her motion the deed verifying the 15.011 acre sale and the mortgage note executed on the farm. This court granted defendant's motion to file supplemental material in response, but he filed none. Under these circumstances, plaintiff's affidavit was accompanied by substantiating documentation, the financial transactions outlined by her will be viewed as having occurred essentially as alleged. Defendant has sold or encumbered all of the assets which he received as a result of the divorce decree with the exception of some of the equipment.

The net effect of these transactions is to substantially alter defendant's financial statement by increasing his liabilities and liquidating his assets. Plaintiff received no real property in the divorce decree. She received the personal property in her possession and an award of

maintenance. If this court were to reconsider the award of maintenance and reverse part of the decree, the trial court would then have to redetermine the property and maintenance awards. In light of the financial transactions in which defendant had participated, plaintiff would be "distinctly disadvantaged" in any such redetermination of maintenance, as defendant's financial picture is now considerably weaker.

■■ We hold that the appeal of the award of maintenance in this case was barred by the defendant's acceptance of the benefits of the divorce decree which would distinctly disadvantage the plaintiff upon any redetermination of those rights.

The defendant also appeals from the trial court's order providing visitation with the following limitations:

> "[V]isitation shall be one day per alternating weekend upon reasonable notice to petitioner or of respondent's intent to exercise visitation. Visitation shall not be overnight and shall be outside the home of one Janie McCombs."

In this case the only testimony regarding visitation was plaintiff's testimony at the March 27, 1978, hearing that she had "qualifications" as to what visitation defendant should be permitted. When asked if she objected to temporarily continuing visitation as it had been carried out during the separation "until the matter is totally disposed of," she replied in the affirmative. The only other mention of visitation of record is notations on the trial court docket sheet of two conferences held by the parties with the trial judge on August 7, 1978, and on April 13, 1978. There is no record of the substance of these conferences other than the docket sheet notation that visitation was one of the subjects discussed. The court on this record prohibited overnight visitation, limited visitation to a maximum of two days per month, and required that such visitations be outside the home of Janie McCombs, which is also apparently defendant's present residence.

Defendant contends that a noncustodial parent is entitled to reasonable visitation unless the trial court finds that the child's health could be endangered, and that the restriction imposed by the trial court's order constitutes both a manifest injustice in so far as he is concerned and an abuse of the trial court's discretion.

While this complaint was filed prior to the effective date of the present Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 607(a)), the decree and orders were issued after its effective date and the proceedings are controlled by that statute. Ill. Rev. Stat. 1977, ch. 40, par. 801(b).

Section 607 of the Act provides:

> "(a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing,

that visitation *would endanger seriously the child's physical, mental, moral or emotional health.*

(b) The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would *endanger seriously the child's physical, mental, moral or emotional health.*" (Emphasis added.)

Defendant argues that the prohibition of overnight visitation and visitation outside of the home of Janie McCombs is an abuse of the trial court's discretion. We find the issue to be whether the visitation provided by the order of the trial court constituted a grant of reasonable visitation to the defendant and father within the meaning of the provisions of the Act.

Case law has evolved the principle that the trial court has a broad discretion in determining visitation of a child and parents which may be modified on review only when there is found to be manifest injustice to the child or parent. *McManus v. McManus* (1976), 38 Ill. App. 3d 645, 348 N.E.2d 507 (appeal from decree fixing visitation); *Crichton v. Crichton* (1979), 75 Ill. App. 3d 326, 393 N.E.2d 1319 (modification of visitation).

The terms of visitation are not to be limited as a punishment for the past conduct of a parent, but determined in the light of present circumstances relevant to the present welfare and best interests of the child. *Aud v. Etienne* (1970), 47 Ill. 2d 110, 264 N.E.2d 196; *Valencia v. Valencia* (1977), 46 Ill. App. 3d 741, 360 N.E.2d 1384.

Certain cases have reviewed instances where the issue was the child's physical well-being. In *Taraboletti v. Taraboletti* (1978), 56 Ill. App. 3d 854, 372 N.E.2d 155, the trial court's order suspending the mother's visitation was affirmed where the evidence disclosed her mental instability, acts of violence and threats to injure the children. In *Valencia v. Valencia* (1978), 71 Ill. 2d 220, 375 N.E.2d 98, it was held that the trial court erred in excluding the evidence under the rule of *res judicata* of the beating and ill treatment by the parent. From these and companion authorities the husband argues that the record contains no tangible evidence of physical or other harm to show that the visitation should be restricted as ordered by the trial court.

The tenor and text of the trial court's order requires an inference that the court was exercising its discretion in the light of the defendant's unmarried cohabitation, but the record is barren of any evidence by which the court's exercise of discretion can be reviewed.

The question of the moral and emotional well-being incident to the relationship between parent and child was examined in *Jarrett v. Jarrett* (1979), 78 Ill. 337, 400 N.E.2d 421. That opinion was directed to

determining the standards in fixing or changing of custody and took as a principal issue the question whether custody may be changed "in the absence of any tangible evidence of contemporaneous adverse effect on the children." 78 Ill. 2d 337, 345.

In *Jarrett*, the mother was awarded custody but thereafter entered into unmarried cohabitation with a man who moved into the home where she lived with the children. The trial court, upon a record disclosing the circumstances, ordered a change in custody to husband. The appellate court (64 Ill. App. 3d 932, 382 N.E.2d 12) reversed the order of the trial court as an abuse of discretion upon concluding that there was no finding that the mother was unfit and that the record did not show either the mother's neglect, want of affection, or other detriment to the welfare of the child. That court stated that it would not speculate as to the future effect upon the children of living in the moral environment represented by the mother's unmarried cohabitation.

The supreme court, with dissent, rejected the rationale of the appellate court. The majority opinion noted that the mother's life style violated the public standards of morality as established by the criminal statutes of the State. Distinguishing past conduct of the custodial spouse as not conclusive upon the question of custody, the opinion stated:

> "Rather than mechanically denying custody in every such instance, the courts of this State appraise the moral example *currently provided* and the *example which may be expected* by the parent in the future. We held in *Nye v. Nye* (1952), 411 Ill. 408, 415, that past moral indiscretions of a parent are not sufficient grounds for denying custody if the parent's present conduct establishes the improbability of such lapses in the future. This rule focuses the trial court's attention on the moral values which the parent is actually demonstrating to the children." (Emphasis added.) 78 Ill. 2d 337, 347.

Noting that the children were aware of the mother's unmarried cohabitation, the opinion concluded that her life style was demonstrated as acceptable to the children and they were effectively instructed in violation of the public standards of morality, although by reason of extreme youth it could not now be predicted whether the children would adopt such way of life. In sum, the opinion determined that as to matters of moral well-being, it was not necessary that the trial court find "actual tangible harm to the children," and that as to the statutory factors of emotional and mental health the court was not limited to evidence of "current physical manifestations" shown by the children.

While the focus of the *Jarrett* opinion was directed to considerations of custody rather than visitation, it is apparent that the rationale contains elements which are present in the terms of visitation to be fixed by the

trial court for varying terms and conditions and are proper considerations in the exercise of its discretion.

■■ The plaintiff argues that this limited pattern of visitation has been voluntarily followed for the two years subsequent to the parties' separation. There is no specific evidence of that arrangement in the record, and that fact alone is insufficient to support a limitation of this magnitude where there is no evidence that it is in the child's best interests. She also argues that this format is reasonable to prevent the continuing acrimony of the divorce. While she finds it distasteful to have any contact with or knowledge of the woman for whom the husband left the marital home, that distaste is not an appropriate reason to so limit Denise's contact with her father. As the second district stated in *Blazina v. Blazina*:

> "The welfare and best interests of the child is the paramount consideration in determining whether visitation rights should be restricted and visitation rights will not be restricted merely because the custodial parent considers such restriction to be advisable." 42 Ill. App. 3d 159, 167, 356 N.E.2d 164, 170-71.

For the reasons stated, the judgment of the trial court determining property and maintenance is affirmed; the trial court's determination of visitation is reversed and remanded for a redetermination of visitation in accordance with this opinion.

Affirmed in part; reversed in part; and remanded with directions.

GREEN, J., concurs.

Mr. JUSTICE CRAVEN, specially concurring:

I concur with the majority insofar as this case is reversed in part and remanded with directions. I am not in agreement with that portion of the opinion that accepts *Jarrett* as having any application to visitation. Judicial acceptance or rejection of parental life-style should have nothing to do with rights of visitation unless there is a clear and convincing showing that such life-style is injurious to the welfare of the child.