MARGARET A. FARIS, Plaintiff-Appellant, v. FRANCIS W. FARIS, JR., Defendant-Appellee.

Second District   No. 2—85—0500

Opinion filed April 30, 1986.

SCHNAKE, J., dissenting.

John E. Juergensmeyer, of Elgin, for appellant.

Mountcastle & DaRosa, P.C., and William I. Ferguson, both of Wheaton, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Margaret A. Faris (wife) was granted a divorce from Francis W. Faris (husband) in a decree entered on September 6, 1977, under the former Divorce Act. Husband filed a petition to modify the decree on September 19, 1984, requesting that his unallocated alimony and support payment be reduced. Wife responded by filing a petition for rule to show cause alleging unallocated alimony and support arrearages, and further petitioned for an increase in alimony and support. Wife also sought her attorney fees. Prior to trial, wife moved by petition for a change of venue from all judges of the eighteenth judicial circuit stating that husband was a practicing lawyer in the circuit and also had just been appointed as an associate judge and was to be sworn in shortly. The petition was denied and the cause proceeded to trial. Wife brings this appeal from orders which, in part, increase the unallocated alimony and support payment, but terminate alimony upon the youngest child reaching age 18, and deny her attorney fees.

Wife raises the following issues on appeal: (1) whether the trial court should have granted wife's petition for a change of venue from all the judges in the eighteenth judicial circuit; (2) whether the trial court improperly ordered termination of alimony upon the youngest child reaching age 18 and, instead should have granted an increase under the circumstances; (3) whether the increase in child support granted was inadequate; and (4) whether the trial court erred in denying her request for her attorney fees incurred in the proceedings.

In a decree of divorce entered September 6, 1977, the parties were divorced, and all other matters were resolved pursuant to an oral property settlement incorporated into the decree. Custody of the three children, Susan, Marc, and Kirsten, was awarded to wife who was to receive $1,300 per month as unallocated alimony and support. The amount would be reduced to $900 per month upon Susan reaching majority, $450 per month when Marc reaches majority, and "[w]hen Kirsten reaches majority the support payments for the wife and children shall cease." During her testimony regarding her agreement with the settlement, wife also specifically acknowledged that when Kirsten attained majority, there would be no further payments of alimony and child support. Other provisions of the decree divided the property between the parties, made husband responsible for the children's college education and extraordinary medical expenses, and allowed husband to deduct the unallocated alimony and support payments on his Federal income-tax return.

On May 2, 1978, the decree was modified by agreement to permit wife and the children to move to Arizona and to require both parties

to share equally the children's transportation costs for visitation back to Illinois. On December 3, 1980, the decree was again modified by agreement of the parties to give husband custody of Susan. The unallocated alimony and support provision was modified to $1,150 per month from $1,300, and upon Susan reaching majority the payment would be $950 per month instead of $900, and upon Marc reaching majority, the payment would be $475 per month instead of $450 as in the original decree.

On September 19, 1984, husband filed a petition to modify the unallocated alimony and support provision to $450 per month on the basis that Susan was in college and Marc was now residing with husband. Husband later filed a petition for rule to show cause requesting repayment of transportation expenses of $3,404 for the children as he had paid $6,809 and, by prior agreement, wife was obligated to pay them on an equal basis. Wife filed a petition for rule to show cause contending that husband had unilaterally reduced payments for two months and owed $500. Wife also petitioned to increase the unallocated alimony (hereinafter called maintenance) and support payment because of her increased expenses and indebtedness and the increased cost of living. She also requested payment of her attorney fees incurred in the proceedings.

On February 20, 1985, wife filed a petition for a change of venue to a judge from a circuit other than the eighteenth judicial circuit. The petition asserted that the judges of the circuit would be prejudiced because of husband's professional and personal acquaintances with the judges as a practicing lawyer and because of husband's recent appointment as an associate judge of the circuit and up-coming swearing in on February 28. The petition was denied because "prejudice has not been shown," and the matter proceeded to trial on February 27 and 28. Wife was allowed to file an amended petition which sought maintenance beyond the date of the youngest child's 18th birthday.

Testimony at trial, briefly summarized, showed that at the time of the 1977 divorce, pursuant to an agreement entered into by the parties, wife was awarded the marital home, which was sold in June 1978 for $101,500 subject to a mortgage of $24,588, most of the household effects and a 1971 Oldsmobile. She was also awarded the unallocated maintenance and support previously discussed. At the time of the divorce, wife was unemployed. Husband received income producing property including two parcels of real estate, an interest in a limited partnership holding real estate, a one-sixth interest in an apartment building, stocks, tax-exempt bonds, a trust, dairy cattle, and an inter-

est in two law firms. This property was not valued, but husband testified that many of the investments were made from funds from two inheritances totalling $133,000 which he received prior to the divorce. He was also awarded a retirement account, a 1976 Cadillac and some paintings and other items from the marital home. Testimony at the 1977 prove-up indicated that husband's gross income in 1976 was $71,000 and his 1977 salary would be $36,000.

Wife used $32,800 of the approximately $70,000 received from the sale of the marital home after taxes and real-estate commission as a down payment on a home in Arizona, assuming a mortgage of $37,900. The remaining money from the sale of the home was used to pay closing costs and fees, to buy a car, for moving expenses, and for improvements and repairs on the home in Arizona, with approximately $5,000 left. She subsequently took out a $15,000 second mortgage to put in an in-ground swimming pool and to make a recreation room out of an existing carport. A third mortgage of $13,000 was taken out to invest in a business which failed. She has been employed sporadically since 1979 and testified that she lost two jobs due to health problems. At the time of trial, she was employed as a secretary for an attorney earning a gross yearly income of $15,600, with a net monthly income of $1,033. While wife argues in her brief that she is now unemployed and that this should be taken into consideration, proofs were not reopened to present evidence on the loss of her job. No argument has been raised on appeal that it was error for the trial court to refuse to reopen proofs, so wife's situation will be considered as it existed at the time of trial.

Wife's only assets are her home which has a market value of approximately $89,900 and is subject to three mortgages totalling $58,000, a car worth $2,700 and household goods worth $3,000. Her current listed monthly expenses total $2,660, including $650 for mortgage payments on the three mortgages, so that her expenses exceed her income by $1,627. Only the youngest child, Kirsten, age 14, now lives with her. Wife testified that Kirsten is now a high school freshman and her expenses have almost doubled since 1980 due to increased clothes and school expenses. Kirsten's monthly expenses were listed as $175.

Husband's financial statements from 1976, 1982 and 1983 and income tax returns from 1979 through 1983 reflected that the value of his investments and his income have increased since 1977, the 1983 statement indicating a net worth of $745,511. He testified, however, that this figure is high because a real-estate investment was overvalued on the statement by approximately $270,000. His highest yearly

income was reported in 1983 when he had a long-term capital gain of $86,175, attributable in large part to the sale of a real-estate investment. He testified that he had only relatively small capital gains in 1984 and didn't anticipate large capital gains in 1985. He further stated that a substantial portion of his assets was received under the terms of the divorce decree and is in large part attributable to continuous investment and reinvestment of those assets.

Husband's current income and expense statements were admitted. The statements indicated that his net monthly income from his new position as associate judge would be $3,055.92 and his net monthly income from investments was $1,701.27 for a total of $4,767.19 per month.

He also testified that he would be receiving $38,500 from the sale of his law partnership over the next three years, or $1,000 per month, and approximately 50% of $60,000 to $70,000 from accounts receivable. His expense statement showed monthly expenses of $5,683.87, including $1,027 per month for Susan's college expenses. Marc has been living with him since September 1984, and he is paying all of Marc's expenses. He stated that he has paid thousands of dollars in medical bills for the children.

Husband also testified that beginning in August 1982, he paid wife an extra $350 a month for 10 months as a loan to help her meet her mortgage payments, evidenced by two letters signed by wife. He had not requested that she repay the loan and the agreement was that it would be repaid when her house was sold. He further stated that her share of the children's transportation expenses since 1980 amounted $3,204. Wife did not dispute this figure, but testified she was unable financially to pay her share of the transportation expenses and husband told her he would take care of it.

The court entered an order on February 28, 1985, which stated that Marc would remain with husband until further order of the court with wife having reasonable visitation; that wife owed husband $3,200 for travel expenses and the $3,500 loaned to her; that husband would pay wife $575 per month as unallocated maintenance and support for wife and Kirsten, with $50 per month deducted until the $3,200 travel expenses were paid; that the modification would be retroactive to the September 19, 1984, filing date; that all maintenance and support payments would cease and be barred upon Kirsten's 18th birthday; and that the court reserved ruling on attorney fees. The trial court made no ruling on wife's petition for rule to show cause regarding support arrearages, so we regard that petition as being dismissed.

Following the trial court's decision on the merits of the contro-

versy, on March 27, 1985, wife filed a post-trial motion requesting modification of the judgment and alleging various errors in the proceedings and judgment. She also filed an affidavit that she had been terminated from her employment. The motion was denied. Although wife had previously requested her attorney fees be paid by husband, a new petition for attorney fees was filed by her attorney in which he represented that he had been paid $3,725 by wife and had spent in excess of $11,000 additional attorney's time.

On June 5, 1985, an evidentiary hearing was held on wife's petition for attorney fees. Her attorney, John E. Juergensmeyer, submitted a computer printout of the services provided by himself, by an associate of his firm, by a senior law student working in his office, and by a paralegal assistant in his office. Attorney Juergensmeyer testified that he billed his time at the rate of $95 per hour, his associate at $45 per hour, the senior law student at $35 per hour, and the paralegal assistant at $25 per hour. Husband agreed to the reasonableness of the hourly rate for Juergensmeyer and his associate only. Attorney Juergensmeyer further testified that applying these rates to the total time spent on the case amounted to fees of $14,650.50, plus additional expenses of $982.50. Another attorney called by wife testified that a $25 hourly rate for a paralegal was reasonable.

On cross-examination, Attorney Juergensmeyer testified that wife and others in her behalf had paid him $3,725 related to this case and $2,000 for post-judgment matters which were regarding the case but were not included in the petition for fees. He testified that the change of venue issue and the difference between the standards for modifying a divorce judgment under the old act and the new act were novel and required extensive research. The printout lists a total of 70.9 hours of legal research by Juergensmeyer and others in his office. Juergensmeyer also testified that the two major issues in the case were the question of child support and whether wife had waived maintenance at the time of the hearing before the original decree of divorce was entered. The computer-printout sheets were admitted into evidence. Husband offered no testimony regarding the attorney fees issue.

The trial court denied the petition for attorney fees and costs finding that each party shall be responsible for their respective fees and costs. In a letter of opinion incorporated by reference in its order denying attorney fees, the trial court found only the change of venue issue to be novel and concluded the other issues are routinely handled in court with a minimal amount of time and by the use of affidavits. The trial court further found some discovery was necessary. However,

it concluded that the request for $14,669.50 for attorney fees was unreasonable and "borders on being unconscionable." The husband was found to have greater income and assets than wife, but was also found to have substantially greater expenses relative to the educational and support needs of the children.

■ The first issue raised by wife involves the denial of her petition for change of venue to a judge from a circuit other than the eighteenth judicial circuit which, in pertinent part, is as follows:

"2. The Defendant, FRANCIS W. FARIS, JR., former husband of the plaintiff, is a lawyer practicing primarily in this Circuit. Throughout the years he has become professionally and personally acquainted with the various Judges presiding in this Circuit.

3. The Plaintiff has become aware of the fact, within the past week, that the Defendant has been appointed to a Judgeship within this Circuit and is due to be installed as a Judge on February 28, and is to begin hearing matters in this Circuit on March 1, 1985.

4. This cause has been set for trial on February 27, 1985, and the proceedings before the Court will inevitably continue past the date of the Defendant's installment as a Judge in this Circuit by reason of possible continuances or additional testimony, or post-hearing motions or matters: Plaintiff fears that she will not receive a fair and impartial trial in any of the Courts in this Circuit because the Judges will be prejudiced in favor of the Defendant, due to the nature of the professional and personal relationship that the Defendant has with them because of the fact that he has been chosen as Judge by the Circuit Judges of this Circuit, and will be working with them on a regular personal and professional basis for the rest of his career.

WHEREFORE, Plaintiff, MARGARET A. FARIS, respectfully requests that this cause be re-assigned to a Judge from another Circuit, pursuant to the change of venue statute, *Ill. Rev. Stat.*, ch. 110, par. 2—1001."

The petition was presented to associate Judge Galasso and, after argument, was denied on the basis that prejudice had not been shown.

Wife contends in her brief that husband had been a lawyer practicing and "presumably socializing" with judges of the eighteenth circuit for years. She also argues that husband's appointment as an associate judge was announced shortly before the trial in this case and that he was sworn in just "minutes" after the trial court announced

its decision on the major issues before it. Further, the issues of attorney fees and post-judgment motions were decided after husband had been sitting on the bench. Under these circumstances, wife asserts that the change of venue should have been granted either as a matter of right because of the appearance of impropriety when a judge of the same circuit rules on a case involving a colleague who is a party, or in the proper exercise of judicial discretion.

A change of venue in a civil case is governed by section 2—1001 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1001). The right to a change of venue is absolute where a motion alleging prejudice of the judge is filed before trial or hearing and before the judge presiding in the case has made any substantial ruling. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1001(a)(2); *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 530, 463 N.E.2d 719.) The petition here, however, was not specifically directed at the presiding judge, Judge Galasso, but requested a change of venue from all the judges of the circuit. Although section 2—1001 contains no language which authorizes a change of venue from all the judges of a circuit, our supreme court has held that where a petition seeks a change of venue from more than one judge, it must contain specific allegations to support the charges of prejudice against the additional judges named and may be granted only in the sound discretion of the court following a hearing. *Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 254, 311 N.E.2d 673.

Also, in cases where a petition has sought a change of venue from all judges of a circuit or county, the Illinois decisions have held that the petition must be factual and may be granted in the sound discretion of the trial court. (*Chicago Park District v. Lyons* (1968), 39 Ill. 2d 584, 591, 237 N.E.2d 519; *Gouker v. Winnebago County Board of Supervisors* (1967), 37 Ill. 2d 473, 475, 228 N.E.2d 881; *Corbetta Construction Co. v. Lake County Public Building Com.* (1978), 64 Ill. App. 3d 313, 326, 381 N.E.2d 758; *Lencioni v. Brill* (1977), 50 Ill. App. 3d 802, 804-05, 365 N.E.2d 1169; *Keehner v. A.E. Staley Manufacturing Co.* (1977), 50 Ill. App. 3d 258, 260-61, 365 N.E.2d 275.) Thus, the rule in Illinois appears to be that a petition for change of venue from all the judges in a circuit must contain specific allegations of prejudice and may be granted in the sound discretion of the trial judge.

The parties have not cited, nor have we found, any Illinois decision where a judge is a party to a suit and the opposing party seeks a change of venue from all the judges in the circuit. Nevertheless, we conclude that the same rule should apply to this petition for change of

venue from all judges in the circuit so that specific allegations of prejudice are required, and it is within the discretion of the trial judge to grant or deny the petition. Wife, however, cites to various canons of the American Bar Association (ABA) code of judicial conduct and to the standards of judicial conduct contained in Supreme Court Rule 61(c) (87 Ill. 2d R. 61(c)), specifically, subsections (4), (12), and (23), in arguing that where a judge is a party, it gives the appearance of impropriety for the judges of the same circuit to hear a case when the other party makes a proper request for a change of venue. While judges in Illinois are subject to the standards of judicial conduct, the standards do not specifically address the issue before us or suggest impropriety in hearing a case in the circuit in which a judge is a party. Accordingly, we reject wife's contention that she is entitled to a change of venue from all judges of the eighteenth circuit as of right, and examine whether the trial judge abused his discretion in denying the motion.

The petition for change of venue essentially alleged the judges of the eighteenth circuit will be prejudiced against wife because of their professional and personal relationship with husband who practiced before them and because of his appointment as an associate judge who would be working with the other judges on a regular personal and professional basis. No more specific allegations of prejudice were alleged, and no further hearing was requested by wife to present any testimony in addition to the allegations made in the motion.

■ The mere fact that husband was an attorney who practiced before the judges in the eighteenth circuit, a single county circuit of over 650,000 people with a total of 30 judges, and who, based on general allegations, had a personal and professional relationship with the judges of the circuit, is insufficient to establish prejudice. More specific facts showing the alleged relationship with the judges is required before we can find the trial judge abused his discretion in denying the motion. (See *Keehner v. A.E. Staley Manufacturing Co.* (1977), 50 Ill. App. 3d 258, 365 N.E.2d 275, where specific example of special consideration was alleged.) The additional allegation that husband was recently selected as an associate judge and would soon enjoy a personal and professional relationship with the other judges in the circuit does not establish any present prejudice because of that alleged future relationship. He has not been associating or working in judicial business with the other judges. Nor does his recent selection as an associate judge by the circuit judges establish prejudice of all the judges of the circuit. The associate judges of the circuit, including Judge Galasso, do not vote on the appointment of an associate judge.

We are not confronted here with a situation where husband has been a judge of the circuit for a length of time and thus has been associating with all the other judges of the circuit. If that were the case, it might well be within the proper exercise of judicial discretion to grant a change of venue to maintain the reputation of the courts for strict impartiality in the administration of justice and to avoid even the appearance of impropriety. See *DeLuca v. CBS Inc.* (1984), 105 A.D.2d 770, 481 N.Y.S.2d 425; *cf. Wisdom v. Wilson* (Ky. 1970), 450 S.W.2d 824.

For the foregoing reasons, we find no abuse of discretion by the trial court's denial of the petition for change of venue.

■ The next issues we consider are whether Judge Galasso erred in modifying the unallocated maintenance and support award and in finding that all maintenance shall cease and be barred upon Kirsten's 18th birthday. Addressing the latter issue first, we note that the question of maintenance beyond Kirsten's 18th birthday first arose in wife's amended petition filed just before trial. While determining the amount of maintenance, if any, to be awarded in the future is dependent on the circumstances existing at that time and would not properly be determined until Kirsten's 18th birthday, the issue litigated below and presented by the parties on appeal is whether wife waived her right to further maintenance after Kirsten's 18th birthday in the original divorce proceedings.

Wife contends that there was no language in the divorce decree expressly precluding modification of unallocated maintenance and support and that the courts have continuing jurisdiction to modify this provision upon a change in circumstances. Wife cites sections 510(a) and 502(f) of the Illinois Marriage and ·Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, pars. 510(a), 502(f)), which allow for modification of maintenance upon a showing of a substantial change in circumstances unless the terms of the settlement upon dissolution of the marriage expressly preclude or limit modification of maintenance. (See *Simmons v. Simmons* (1979), 77 Ill. App. 3d 740, 396 N.E.2d 631.) Husband responds, and we agree, that the issue is whether wife, at the time of the original divorce, waived her right to maintenance payments once Kirsten reached her 18th birthday. If there was a waiver of further maintenance upon Kirsten's 18th birthday, then maintenance cannot be ordered beyond that date. If maintenance was not waived, it is modifiable depending on the circumstances at the time of the hearing.

As it relates to maintenance, the original decree of divorce provides, in pertinent part, "[w]hen Kirsten reaches majority the support

payments for the Wife and children shall cease." The transcript of the testimony at the time of the original proceeding discloses that wife, when her lawyer told her that upon Kirsten reaching her majority there will be no further payments of alimony and child support under this provision, responded "[t]hat is correct."

Section 18 of the Divorce Act, in effect at the time of the divorce, provided, *inter alia*, with respect to maintenance, as follows:

> "Irrespective of whether the court has or has not in its decree made an order for the payment of alimony or support it may at any time after the entry of a decree for divorce, upon obtaining jurisdiction of the person of the defendant by service of summons or proper notice, make such order for alimony and maintenance of the spouse and the care and support of the children as, from the evidence and nature of the case, shall be fit, reasonable and just, *but no such order subsequent to the decree may be made in any case in which the decree recites that there has been an express waiver of alimony* or a money or property settlement in lieu of alimony or where the court by its decree has denied alimony." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 40, par. 19.)

Neither the decree nor the transcript discloses an express waiver of maintenance. (*Cf. Hartman v. Hartman* (1980), 89 Ill. App. 3d 969, 970, 412 N.E.2d 711.) Moreover, the statement to wife at the time of the divorce that upon Kirsten reaching majority there will be no further payments of alimony and child support is followed by the words "under this provision." This also casts doubt as to whether wife was expressly waiving her right to all maintenance. Nor does the transcript reveal that this right to maintenance was explained to wife or that she knew she would be forever barred from maintenance after Kirsten's 18th birthday.

Thus, we conclude maintenance was not waived by her and that the decree does not recite that there is an express waiver of maintenance. The trial court's finding that maintenance is barred upon Kirsten's 18th birthday must be reversed, and maintenance may be considered in the future in accordance with section 510 of the Illinois Marriage and Dissolution of Marriage Act.

■ Wife next makes separate arguments that the court erred in failing to increase her maintenance or to sufficiently increase child support for Kirsten. For purposes of this decision, we shall treat these issues together because of their interrelationship due to the method that the parties themselves selected in entitling the payments unallocated maintenance and support.

Wife argues that the unallocated maintenance and support payments should have been increased substantially as her living expenses have increased due to inflation and husband's ability to pay has also increased. She correctly contends that the same statutory factors which are considered in making an initial award of maintenance apply in determining whether a maintenance award should be modified. (*In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 912, 483 N.E.2d 692; Ill. Rev. Stat., 1984 Supp., ch. 40, par. 504(b).) These factors include the property awarded to the party seeking maintenance, the standard of living established during the marriage, and duration of the marriage, the ability of the spouse seeking maintenance to meet her needs independently, and the ability of the other spouse to pay. Wife points out that she did not work during the 18-year marriage of the parties and is now unable to meet her expenses through her own resources. She contends that an adequate maintenance award is appropriate here as the income from the marital property she was awarded is insufficient to provide for her reasonable needs, arguing that she was awarded a disproportionately small share of the marital property under the terms of the original decree.

■ The difficulty with wife's argument is that the parties agreed in 1977 to the property division and unallocated monthly payments which were to be reduced as each child reached majority. Although husband, who has much superior earning potential as compared to wife, clearly was also awarded a substantially greater share of the assets, this is what was agreed upon by wife at the time of the divorce decree. While arguably wife received a disproportionate share of the property in 1977 when she was given only the marital home and no income-producing assets, that matter is not now before us on review. Also, the asset wife did receive, the marital home, was sold in 1978 with a net gain of $70,000. This was used, in part, to purchase a home in Arizona which required expenditures for repairs and improvements. Wife has also increased her financial difficulties by taking out mortgages to make additions to the home and to invest in a business which failed. Husband's assets, which he was awarded at the time of the divorce by agreement, have appreciated in value. The fact that wife's financial transactions have increased her difficulties in meeting her expenses should not cause a disadvantage to husband. See *In re Marriage of Lawver* (1980), 82 Ill. App. 3d 198, 200-01, 402 N.E.2d 430.

■ A court may modify a maintenance award "only upon a showing of a substantial change in circumstances" (Ill. Rev. Stat. 1983, ch. 40, par. 510(a)), and a trial court's decision as to modification will not

be disturbed absent an abuse of discretion (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 287, 469 N.E.2d 167). Here, evidence at trial showed that wife was employed with a gross salary of $15,600, whereas she was not employed at the time of the divorce. As discussed previously, although wife argues in her brief that she is now unemployed, no evidence was introduced as to the loss of her job and that may not be considered. The only testimony presented by wife as to increased expenses was that her house payment has increased due to the addition of two mortgages and evidence of the increase in the consumer price index. Based on her situation at the time of trial as compared with the situation at the time of the divorce, wife hasn't shown the present need for maintenance. The record shows that wife has the ability to support herself (see *In re Marriage of Banach* (1986), 140 Ill. App. 3d 327, 336, 489 N.E.2d 363), so there was no abuse of discretion in the trial court's decision.

■ Wife additionally argues that more child support is necessary to adequately support the one child remaining in her care, Kirsten, based on Kirsten's increased needs and husband's increased income. Wife, however, lists Kirsten's monthly expenses at only $175 per month. We note that it is evident that expenses for Kirsten also include housing and food costs. Also, a child's increased needs may be presumed from the fact that she is older and the cost of living has risen. (*In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 73, 441 N.E.2d 1221.) However, the parties in 1980 agreed on a payment of $475 for one child. This was the figure agreed on as the amount husband was to pay wife after Susan and Marc reached 18. As husband is now providing for all of Marc's expenses, wife has only Kirsten to support. Therefore, the order in this case ordering payments of $575 per month substantially increases the amount agreed on by the parties. Although it is clear that husband's income and net worth have increased over the years in question, his responsibilities have also increased. He now has full responsibility for Marc's expenses and testified he is paying $1,027.58 per month for educational expenses for Susan. The modification of child support payments lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229), which is not present here.

■ The trial court, however, then reduced the increased payment by $50 per month on the basis of wife's obligation to contribute toward transportation expenses. While wife did agree to pay one-half of transportation costs, based on the circumstances in this record, this should not have been used as an offsetting figure to reduce the

monthly payments. While the trial court's finding that wife owes husband $3,200 for the children's transportation expenses under the 1978 modification of the original decree is affirmed, she does not have the present ability to repay this amount, and reducing child support as a method of repayment is an abuse of discretion under these circumstances. On this record, the full $575 should be paid retroactive to the date of the petition. Further, as these payments end upon Kirsten's reaching majority, in our opinion the $575 monthly payments are clearly child support, and we so find.

▮ Wife also argues that the statutory guidelines of sections 504 and 505 apply to this action for modification and should have been followed. The guidelines provide that for maintenance and support of one child, the amount awarded should be 30% of the payor parent's net income, which wife contends would be at least $1,260 per month. The guidelines are mandatory "unless the court makes express findings of fact as to the reason for departure below the guidelines." (Ill. Rev. Stat., 1984 Supp., ch. 40, pars. 504(b), 505(a).) Here the court specifically stated at the hearing on wife's post-trial motion that the statute was not being followed because husband was solely responsible for Susan's college expenses and Marc's expenses, with no contribution by wife towards Marc's needs. As the required finding was made by the court, there was no abuse of discretion in awarding child support of $575 per month.

▮ The final issue raised by wife is that the trial court erred in denying her petition for attorney fees. Her appellate brief exclusively advances arguments toward husband's responsibility for fees based upon his action in bringing the petition to modify and his fault in the unilateral reduction of support for two months, in addition to her inability to pay fees and husband's ability to pay. The brief does not address the trial court's specific finding that the request for $14,669.50 in fees was unreasonable, and, in fact, the brief notes that because there was no award of attorney fees, "the proper amount of such award is not reached." Accordingly, any error in the court's finding that the amount requested was unreasonable is waived.

▮ Under section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508), the trial court may order either spouse to pay a reasonable amount for attorney fees necessarily incurred by the other spouse in any proceeding under the Act. The general rule in this regard is that to justify allowance of attorney fees the party seeking the relief must show financial inability to pay and the ability of the other spouse to do so. (*In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 477, 448 N.E.2d 1030.) The al-

lowance of attorney fees is within the sound discretion of the trial court, and its determination will not be overturned unless the trial court has clearly abused its discretion. *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 229, 446 N.E.2d 499.

██ Wife appears to contend that attorney fees should be awarded because of husband's unilateral reduction of support and because of his filing the petition to modify. While under limited circumstances where a party has incurred fees for enforcement of a child support order and the failure to pay support was without cause or justification, the payment of attorney fees is mandatory (Ill. Rev. Stat. 1983, ch. 40, par. 508(b); *Elliott v. Elliott* (1985), 137 Ill. App. 3d 277, 279-81, 484 N.E.2d 482), this situation is not present here. Although husband reduced the unallocated maintenance and support before Susan reached age 18, this was expressly understood by wife at the time of the divorce because husband was to begin paying Susan's college expenses before her 18th birthday.

██ The only possible basis for an award of fees here is upon wife's showing her inability to pay and her former husband's ability to pay. (See *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 229, 446 N.E.2d 499.) We believe it is clearly shown that husband has the ability to pay. Wife, however, has not demonstrated that she is unable to pay her attorney fees. Prior to the hearing on fees, she and other "persons in her behalf" paid attorney Juergensmeyer $5,725, of which $2,000 apparently was for post-judgment matters relating to the case but not a part of the billings reflected in the printouts. Thus, there is evidence that she has the ability to pay her fees. Wife has chosen not to discuss the trial court's finding of the unreasonableness of the $14,669.50 fee request thus waiving review of whether her $5,725 payment was adequate payment for reasonable attorney fees incurred. On this record, we are unable to conclude that the trial court abused its discretion in refusing her request for attorney fees.

Affirmed in part, reversed in part, and modified in part.

STROUSE, J., concurs.

JUSTICE SCHNAKE, dissenting:

I must respectfully dissent, because in my view wife's petition for change of venue should have been granted.

At a time in our State when, because of the actions of a faithless few, the integrity of both the judiciary and the legal profession has come under attack, it is incumbent upon the courts to be extrazealous

in maintaining the highest standards of probity.

While the opinion of the majority correctly states that no reported Illinois case addresses the singular situation found here, I would suggest that the issue has not reached our reviewing courts because of the exercise of common sense by litigants, counsel and judges at the trial level, where maintaining standards of fairness requires only routine administrative handling.

To avoid the appearance of judicial impropriety is always of paramount importance, and I am disturbed by a reluctance to quicken the conscience of the courts.

Because the mere appearance of prejudice appears to be inherent under the facts here, an actual showing of prejudice should not be required. This kind of contest cannot be governed according to the usual rules of the game. There being no Illinois precedent, the opportunity presented by this case should have been seized to fill that void.