*In re* MARRIAGE OF THOMAS DONALD FAZIOLI, Petitioner-Appellee, and ELIZABETH JEAN FAZIOLI, Respondent-Appellant.

First District (4th Division) No. 1—89—1662

Opinion filed August 9, 1990.

246

Frank E. Mosetick and Michael J. Mosetick, both of LaGrange, for appellant.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:
Respondent, Elizabeth Fazioli, appeals from an order of the circuit court of Cook County, which modified the judgment for dissolution of marriage and child support but denied other requests for relief.

On May 10, 1983, petitioner Thomas Donald Fazioli and Elizabeth Jean Fazioli were awarded a judgment for dissolution of marriage. A marital settlement agreement between the parties was approved and incorporated in the judgment for dissolution.

Under the terms of the agreement, Elizabeth retained sole custody of the parties' two minor children, Joseph Anthony, age 10 at the time, and Ann Marie, age six. Thomas was awarded reasonable

visitation. Elizabeth was awarded $2,000 per month as unallocated support and maintenance. However, the first monthly payment was to be in the amount of $5,500. The unallocated support payments were based on Thomas' 1982 adjusted gross income of $64,500.

From the marriage, Thomas retained a 1978 Jaguar automobile. Elizabeth retained all of the personal property, art work, furniture, furnishings and other belongings then in the marital residence. Each party retained the IRA account at American National Bank & Trust Company which was in his or her name. Thomas also executed a quitclaim deed in favor of Elizabeth to the two-apartment building which housed the parties' marital residence at 539 North Franklin Street in River Forest, Illinois. Thomas also agreed to pay the balance due for home remodeling costs which had been undertaken prior to the separation of the parties.

Also as part of the agreement, Thomas agreed to maintain his term life insurance policy in the amount of $500,000. Elizabeth was a beneficiary of the policy in the amount of $250,000. Each of the children was a beneficiary in the amount of $125,000. Thomas remained responsible for the children's medical insurance.

On September 16, 1987, Elizabeth filed a petition to modify the judgment for dissolution of marriage and child support. The petition alleged that Thomas' income had substantially increased and he was well able to afford an increase in child support. She also alleged that the needs of her children and her own needs had increased.

A hearing was held on the petition. Elizabeth offered testimony as to the alleged increased needs of the children and herself. She testified that she still resided with her children at 539 Franklin in River Forest. She rented the first-floor apartment for $975 per month. In 1983 the apartment rented for $675 per month. The mortgage payments on the home were $730 per month. According to Elizabeth, the house required a lot of maintenance, including washing the walls when new tenants moved in and gardening. The tenants paid their own electric and telephone bills. Elizabeth provided heat, water and garbage pick-up.

Since the date of the judgement for dissolution of marriage, Elizabeth has, according to her testimony, incurred debts totaling $38,458. She testified that she borrowed $12,000 from her parents to side the home and install storm windows. Although she could have had it painted for $4,000, she installed the siding to alleviate the necessity of having to paint every few years. In 1985 a pipe broke in the wall, and Elizabeth had to borrow $875 from her parents for the repairs. In 1988 she borrowed another $375 from them for a new ga-

rage door opener.

In 1987, Elizabeth borrowed $30,000 from her parents to reduce her mortgage payments. This $30,000 debt was in addition to the $38,458 debt to which she had testified. At the time of the hearing the market value of the home was $235,000, and there was approximately a $40,000 mortgage.

Elizabeth testified that in 1983 she had to buy a used car for $7,800 because Thomas took the family car in the divorce. An additional $6,000 had to be borrowed from her parents for this car. In 1986 she had to borrow $1,000 from a friend for current expenses. In 1987 Elizabeth had to borrow $2,100 for medical bills for herself. She also had to borrow an additional $4,300 from her parents for another car. In 1988 Elizabeth had to borrow $3,375 from family and friends to meet current expenses.

Elizabeth presented two affidavits to the trial court, one listing monthly expenses in 1983, the other expenses for 1988. She claimed that her monthly expenses had risen to $5,748 and her income was $3,056 per month, leaving a deficit of over $2,000. However, Elizabeth's affidavit claimed expenses for real estate taxes which, as elicited through cross-examination, were included in the monthly mortgage payment. Rental on her art gallery, which she operated at a substantial loss, was included twice and, although she claimed an increase in house maintenance from 1983 to 1985 from $50 to $500, she produced no bills or receipts explaining this increase.

As part of her monthly budget, Elizabeth listed $250 a month for the children's educational expenses. However, Elizabeth testified that if she asked Thomas to reimburse her for these expenses, he did.

Elizabeth earned approximately $81 per month as a substitute lunchroom aide. Elizabeth had a bachelor's degree in education and taught elementary school from 1968 to 1983. Her teacher's certificate, however, had then expired, and she had not enrolled in courses which would enable her to renew the certificate. Elizabeth testified that she had checked into teaching but there were no jobs. She had not applied for any full-time teacher's aide positions.

Thomas took no personal property from the marriage other than his automobile. After the divorce he first lived in an apartment. In 1984 or 1985, he purchased a condominium. In 1986 Thomas and his new wife purchased a home in Barrington Hills for $265,000. The house was located on a five-acre lot. Thomas testified that his wife, who was then pregnant, used part of her proceeds from a personal injury settlement to build a horse barn, and they kept four horses on the property. Thomas also had a swimming pool installed which cost

approximately $34,500.

In 1986, Thomas, a personal injury attorney, had a gross income of $416,286. In 1987, his gross income was $298,779. For 1988, his estimated income was $212,635 minus about $81,000 for expenses. He explained that his income varied from year to year.

Thomas estimated that the children from his marriage to Elizabeth spent approximately one-third of the year with him, and he paid for all the food and their expenses when they were with him as well as the full $2,000 for maintenance and support to Elizabeth.

Thomas buys clothing for the children, including riding clothes for Ann and suits for his son's school debates. He also paid his son's expenses for debating trips and for Ann's equestrian events. Thomas estimated that he also paid $2,500 a year for his son's summer program and $500 for his daughter's summer program.

After the hearing, the trial court ruled that the children's school, extracurriculars, ordinary medical and camp expenses, which Thomas had voluntarily been paying, were now mandatory payments. Therefore the court refused to increase the unallocated maintenance and support paid to Elizabeth. In making its ruling, the trial court commented:

> "It certainly is clear to the Court that the expenses that Mrs. Fazioli is incurring for rent for her studio, for her art supplies, for going to various art fairs should not be the obligation of Mr. Fazioli. It appears that although she's running a business for her art interests, that it is bringing no income to her. And it does not appear to this Court that Mr. Fazioli should have to defray these costs. And it is clear to the Court that many of the improvements on the home should not be Mr. Fazioli's obligation, since they are adding to the equity in the asset which Mrs. Fazioli was awarded by the judgment."

The court further stated:

> "But the Court has very closely reviewed the affidavit of Mrs. Fazioli to see if in fact, there has been an increase in the needs of the children, and of the household. It is clear to the Court that there have been some increases for the children's expenses, but that most of the increases on Mrs. Fazioli's affidavit are for debts that she has accrued over the past couple of years for improvements in the house, for a car, for her and for art supplies and expenses for a business that she's apparently, running."

Elizabeth argues that the trial court erred by denying her petition to modify unallocated maintenance and support. The court did

modify the judgment to the extent that Thomas was now required to pay certain expenses which he had been paying voluntarily. However, since the denial of an increase in the monthly payment affected both maintenance and child support, we shall treat both issues because of their interrelationship due to the method that the parties selected in entitling the payments unallocated maintenance and support. We first address the portion of the court's order as it relates to maintenance.

██ Elizabeth and Thomas entered into a marital settlement agreement. This agreement was incorporated as part of the judgment dissolving the parties' marriage. The terms of a settlement agreement, except as they pertain to children, are binding upon the court and will be set aside only if the court is shown that the agreement is unconscionable or procured through fraud, coercion or duress. *In re Marriage of Stadheim* (1988), 170 Ill. App. 3d 19, 23, 523 N.E.2d 1284.

 █ Furthermore, a court may modify a maintenance award "only upon a showing of a substantial change in circumstances." (*Faris v. Faris* (1986), 142 Ill. App. 3d 987, 1000, 492 N.E.2d 645.) A trial court's decision as to modification will not be disturbed absent an abuse of discretion or unless it is against the manifest weight of the evidence. (*In re Marriage of Lasota* (1984), 125 Ill. App. 3d 37, 41, 465 N.E.2d 649.) The burden of demonstrating the alleged substantial change in circumstances is on the party seeking relief. In determining whether and to what degree a maintenance award shall be modified, the trial court should consider the same factors which, under the statute, are to be assessed in making the initial award. *Lasota*, 125 Ill. App. 3d at 41.

██ In *In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 634-35, 450 N.E.2d 1229, the court held that the party receiving maintenance is under an affirmative obligation to seek appropriate training and skills to become financially independent.

Elizabeth argues that a substantial change in her circumstances justified an increase in maintenance. She notes that Thomas' income has substantially increased and her expenses have greatly increased. However, many of Elizabeth's contentions regarding expenditures were refuted. Furthermore, many of her expenses were for improvements to her home, some of which were not necessary.

██ Elizabeth also testified that she spent $362 to rent space for her art gallery and for supplies yet this business earned her only $450 to $500 in the year before the hearing. Elizabeth has increased her financial difficulties by persisting in a failing business. The fact

that her financial transactions have increased her difficulties in meeting her expenses should not cause a disadvantage to her former husband. See *Faris*, 142 Ill. App. 3d at 1000.

■ The record discloses that Elizabeth has a college degree in education and taught from 1968 to 1983. However, the record does not indicate that Elizabeth has tried to find a job as a full-time teacher's aide, or that she has returned to school to take courses necessary to regain her teacher's certificate. Based on the situation of the parties as a whole, Elizabeth has not demonstrated the trial court's ruling was an abuse of discretion.

■■ Modification of child support is governed by section 510 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 510(a)). Upon application for a modification of support, the court's paramount consideration is whether a substantial and material change in circumstances has occurred since the entry of the judgment which would authorize the court to change the allowance. (*Roqueplot v. Roqueplot* (1980), 88 Ill. App. 3d 59, 62, 410 N.E.2d 441.) Where a former spouse's ability to pay is shown, the fact that the children have grown older and the cost of living has risen are proper bases for establishing increased need. (*Schmerold v. Schmerold* (1980), 88 Ill. App. 3d 348, 350, 410 N.E.2d 629.) The increase in the children's needs must be balanced against the relative ability of the parents to provide for them, and where a change has occurred which creates a substantial imbalance between the child's needs and the parent's support capabilities, modification is required. *Schmerold*, 88 Ill. App. 3d at 350-51.

■ Although various household expenses are expenses that can, in part, be attributable to the children, Elizabeth has not shown any specific increased needs of the children for which Thomas was not already voluntarily paying. To the extent that Elizabeth demonstrated that some of the children's needs for which Thomas was already providing increased, the trial court modified the judgment and ordered Thomas to now pay these expenses. Although it is clear that the husband's income and net worth have increased over the years, his responsibilities have also increased. Further, Elizabeth also has an obligation to financially contribute to the support of the family. There was nothing in the record to suggest that she is unable to do so. The modification of child support payments lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229), which is not present here.

The trial court increased the husband's payments by the amount

it felt the children's needs had increased. On this record we are unable to conclude that the trial court abused its discretion in refusing Elizabeth's request for additional sums.

Order affirmed.

McMORROW, P.J., and JOHNSON, J., concur.