BONNIE GIBSON, a/k/a Bonnie Barton, Plaintiff and Petitioner-Appellee, *v.* JAMES OLEN BARTON, Defendant and Respondent-Appellant.

Fourth District   Nos. 4—82—0663, 4—83—0125 cons.

Opinion filed October 13, 1983.—Rehearing denied November 9,1983.

578

Herrick, Rudasill & Moss, of Clinton (Ray Moss, of counsel), for appellant.

Lamkin and Lamkin, P.C., of Clinton (Phillip Lamkin, of counsel), for appellee in 4—82—0663.

No appearance for appellee in 4—83—0125.

Stephen Myers, of Clinton, guardian *ad litem*.

JUSTICE TRAPP delivered the opinion of the court:
Respondent, James Barton appeals from an order modifying visitation rights, increasing child support, and, in cause No. 4—83—0125, from an order finding him in contempt for failing to pay child sup-

port. We affirm in part and reverse in part.

The current appeal arises out of a petition filed by petitioner, in September of 1981, to increase child support and modify visitation. Respondent denied the allegations of the petition and counterpetitioned for a change in custody, with a request that a guardian *ad litem* be appointed for the children. The matters were heard jointly and on June 8, 1982, the trial court entered a modified order reducing visitation rights, increasing respondent's support obligation to $640 per month and denying the counterpetition for a change in custody. In cause No. 4—83—0125, respondent has appealed an order of December 23, 1982, finding him in contempt for failing to pay approximately $1,400 in accrued child support.

Respondent first contends that the trial court erred in reducing his visitation rights without making a finding or hearing evidence to support a finding that the current visitation arrangement was seriously endangering the children's physical, mental, moral, or emotional health. Section 607(c) of the Illinois Marriage and Dissolution of Marriage Act provides, in part:

"[T]he court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health." Ill. Rev. Stat. 1981, ch. 40, par. 607(c).

The original divorce decree provided for "reasonable visitation" to be exercised by respondent. In 1974, the order was clarified by the court and specific visitation periods were prescribed. This order provided visitation on alternative weekends from 5 p.m. on Friday until 7 p.m. Sunday, with four weeks of summer vacation. The petition at issue here requested the court to modify these periods due to the fact that the children had weekend school activities which conflicted with the scheduling. No evidence was introduced, nor were allegations made, that the current visitation schedule was endangering seriously the children's physical, mental, moral, or emotional health, but all of the children did testify that they had conflicting school activities and requested a change in the schedule. The court modified visitation "because of the activities of the children" from Saturday noon until Sunday at 7 p.m., summer visitation was reduced to two weeks, and specified holidays were to be alternated.

Respondent's contention that explicit findings are required to "restrict" a parent's visitation rights is premised on his assumption that the court's decree was the equivalent of a restriction of visitation rights. We disagree. Section 607 of the Illinois Marriage and Dissolution of Marriage Act contains several standards concerning visitation.

Section 607(a) states that a noncustodial parent "is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health." (Ill. Rev. Stat. 1981, ch. 40, par. 607(a).) Section 607(c) requires the court to consider the children's best interests whenever making any modification and the second sentence of that subparagraph prohibits a restriction of visitation rights unless the court finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health.

In interpreting a statute a court must give consideration to each word and provision of the statute to ascertain the statute's meaning and promote its essential purpose. (*Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 387 N.E.2d 300.) When the standard of section 607(a) is compared with that of the second part of section 607(c) we cannot escape the conclusion that some difference in the scope of the statute was intended by the legislature. Under respondent's interpretation, the standard of section 607(c) would be subsumed within the provision of section 607(a) rendering section 607(c) essentially meaningless.

▉▉ The word "restrict" in its ordinary sense means "to keep within certain limits." (Webster's New World Dictionary 1213 (2d col. ed. 1976).) Such restrictions might be a prohibition of overnight visitation (see *Crichton v. Crichton* (1979), 75 Ill. App. 3d 326, 393 N.E.2d 1319), a requirement that visitation occur in the custodial parent's home, or a requirement that visitation occur outside the home of the noncustodial parent. (*In re Marriage of Lawver* (1980), 82 Ill. App. 3d 198, 402 N.E.2d 430.) The court's reinterpretation of its 1974 decree was made with the children's best interests in mind and is fully supported by the testimony at the hearing. The order is well within the broad measure of discretionary authority given the trial court in these matters and we cannot say that an abuse has been shown. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308.) In light of our interpretation of the statute, we need not consider whether specific findings are required to restrict a noncustodial parent's visitation rights but merely note that the appellate court is split on the issue. *In re Marriage of Solomon* (1980), 84 Ill. App. 3d 901, 405 N.E.2d 1289; but see *In re Marriage of Johnson* (1981), 100 Ill. App. 3d 767, 427 N.E.2d 374.

Respondent's next contention is that the trial court abused its discretion in modifying his child support obligation by increasing his support payments from $45 per week, as provided under a 1974 order, to $640 per month. We agree with respondent that this is a significant

increase from the 1974 order but do not agree that the modification is an abuse of discretion. *In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005.

In making or modifying an award of child support, the trial court must consider all relevant matters, including, the financial resources and needs of the parties, the standard of living the children would have enjoyed if the marriage had not been dissolved, the resources of the children, the physical and emotional condition of the children, and their educational needs. (Ill. Rev. Stat. 1981, ch. 40, par. 505(a).) The evidence indicates both increased needs of the children and an increased ability of respondent to pay. Without unduly lengthening this opinion by repetition of all the evidence of the parties' financial circumstances, suffice it to say we believe that the evidence presented below supports the order entered.

In 1974, respondent was earning $540 net per month while in 1981 he was earning $1,600 net monthly. He emphasizes that the order is a 328% increase, but we note that a corresponding increase in his income occurred during this period. The record reflects a careful consideration by the trial court of the appropriate factors, and we cannot say that the current order is an abuse of discretion.

Within 30 days of the trial court's order, respondent filed a motion to introduce additional evidence that he had suffered a reduction in salary of approximately $400 per month. This motion was denied, and in an offer of proof, respondent introduced check stubs and a letter from his employer indicating that his wages would be reduced approximately $300 per month. On appeal, respondent argues that this "newly discovered evidence" was not in existence at the time of trial and would probably have changed the result of trial. Respondent suggests that the court abused its discretion in refusing to consider this evidence.

Post-trial motions based on newly discovered evidence are not uncommon in dissolution actions. In *In re Marriage of Hopkins* (1982), 106 Ill. App. 3d 135, 435 N.E.2d 897, this court found no abuse of discretion in the denial of a post-trial motion to hear additional evidence regarding the nature of a marital debt. In that case we found that the additional evidence was immaterial to the resolution of the allocation of the parties' marital debts and would not have affected the court's decree. In *In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1192, the court upheld the denial of a post-trial motion which sought to introduce allegedly newly discovered evidence of an increase in the value of the parties' marital residence. The increase in value was alleged to have occurred in between the

date of a pretrial stipulation and the time that the court divided the marital estate. In upholding the denial of the post-trial motion, the appellate court stated that to justify granting a rehearing on the basis of newly discovered evidence, a party must demonstrate that the evidence is of a conclusive or decisive nature, making it probable that a different judgment would have been entered, and that the evidence could not have been discovered prior to trial in the exercise of due diligence.

■■ At bar, the evidence which respondent sought to introduce to the court was not newly discovered evidence but rather was evidence which arose subsequent to the entry of the judgment. The standard for introducing newly discovered evidence by way of a post-trial motion presupposes that the evidence exists prior to judgment but is not discoverable in the exercise of due diligence until after the judgment. We agree with the trial court that the proper procedure would have been to file a motion to modify pursuant to section 510 of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1981, ch. 40, par. 510.

Respondent next challenges the trial court's order requiring him to pay 80% of the fee of the guardian *ad litem*. Respondent contends that the allocation of the burden of payment of the guardian's fees was an abuse of discretion and that the award was improper because it did not differentiate between in-court and out-of-court time.

Section 605 of the Illinois Marriage and Dissolution of Marriage Act governs the appointment of an attorney or guardian *ad litem* for the minor children and provides that "[t]he court shall enter an order for costs, fees and disbursements in favor of the child's attorney and guardian-ad-litem, as the case may be. The order shall be made against either or both parents, or against the child's separate estate." Ill. Rev. Stat. 1981, ch. 40, par. 506.

■■ As for the amount of the guardian's fees, the allowance of such fees rests with the sound discretion of the trial court, and the exercise thereof will not be interfered with unless such discretion is clearly abused. (*Brophy*.) The amount to be assessed depends upon the facts and circumstances of each case, and in determining the amount of payment, the trial court must consider the total circumstances of the mother and father; the skill and standing of the attorney employed; the importance, novelty, and difficulty of the questions raised, especially from a family law standpoint; the degree of responsibility involved from a management perspective; the time and labor required; the usual and customary charge in the community; and the benefits to the client. (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d

597, 400 N.E.2d 56; *Brophy*.) Normally, a fee award is based upon a separate hourly rate for court time and noncourt time on the assumption that the former demands a higher degree of competency and therefore merits greater rewards. *Brophy*.

■ We are aware of no rule requiring that all fee awards be based on different charges for court versus noncourt time, and we do not find the award as a whole to be excessive or unreasonably high. The award of $1,898 was based upon the affidavit of the guardian *ad litem* and his testimony at the hearing for fees in which both parties participated. We conclude that the evidence supports the award made by the trial court. We also cannot say that the allocation of the burden of payment was an abuse of discretion. The appointment of a guardian *ad litem* was necessitated by respondent's counterpetition for a change in custody and we think it proper that the party necessitating the guardian's appointment should bear the greater part if not all of the expenses. In *Roth v. Roth* (1977), 52 Ill. App. 3d 220, 367 N.E.2d 442, the court considered as a factor in determining who should pay attorney fees, the party who precipitated the need for the fees. In that case, the court upheld an award of $3,500 in attorney fees against the husband noting, "Defendant had petitioned the court to appoint the guardian ad litem at the outset of these lengthy custody proceedings. At the conclusion of the proceedings the court, in its discretion, assessed the fees of the guardian ad litem to defendant." 52 Ill. App. 3d 220, 227, 367 N.E.2d 442, 448.

■ The final issue is whether the trial court's finding that respondent had wilfully and contumaciously violated the court's modified support order is against the manifest weight of the evidence. We conclude it is, and reverse.

Following the entry of the trial court's modified order, respondent paid support in full for June of 1982 but paid only approximately $400 per month in the following months. On November 1, 1982, petitioner filed a petition for rule to show cause why respondent should not be held in contempt for failing to make child support payments in full. At a hearing on the petition, respondent testified that he had spent $9,000 of a treasury bill and certificate of deposit in June in payment of his attorney fees, two loans, and hospital bills. Respondent also testified that he was informed as of July 1, 1982, that he would be making $300 less per month. Respondent denied that he was able to pay more than $400 per month in support. On December 8, 1982, the trial court found him in contempt but has stayed the order pending this appeal.

■ The failure to pay child support as required by court order is

584

*prima facie* evidence of contempt. (*Gentile v. Gentile* (1980), 87 Ill. App. 3d 311, 409 N.E.2d 52.) If such a showing is made, it is incumbent upon the alleged contemner to show that the failure to comply was not wilful and contumacious. *Gentile; People ex rel. Argo v. Henderson* (1981), 97 Ill. App. 3d 425, 422 N.E.2d 1005.

The evidence at the show cause hearing indicates that respondent has made required support payments for nine years and was delinquent only after the modified order was entered. Although there was evidence that respondent had money available to him aside from his earnings, he testified that this was used to pay his attorney fees and loans which were currently due before he was advised that his wages would be reduced in July of 1982. Even after his wages were reduced $300 per month, he made child support payments of $200 from each bimonthly paycheck. Petitioner offered no evidence and elicited no testimony from respondent to establish that he was able to pay the support obligation and other debts. The record as a whole contains little evidence to suggest that respondent's failure to pay support was wilful and contumacious. Rather, this appears to be the first such default of respondent, and in light of evidence of a significant increase in child support and reduction in salary, we believe that the failure to make the required support payments was due solely to respondent's inability to make such payments. The trial court's order finding respondent in contempt is reversed. In all other respects the orders are affirmed.

Affirmed in part and reversed in part.

GREEN and MILLER, JJ., concur.