In re MARRIAGE OF MANHEIR CHEHAIBER, Petitioner-Appellee and Cross-Appellant, and MILIJANA VLASTELICA, Respondent-Appellant and Cross-Appellee.—In re MARRIAGE OF MANHEIR CHEHAIBER, Petitioner-Appellee, and MILIJANA VLASTELICA, Respondent-Appellant.

Second District    Nos. 2—08—0375, 2—08—1030 cons.

Opinion filed September 18, 2009.—Rehearing denied October 19, 2009.

Milijana Vlastelica, of Naperville, for appellant *pro se.*

Stephen R. Botti and Jamie L. Ryan, both of Oak Brook, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

Respondent, Milijana Vlastelica, appeals the trial court's order resolving several postdissolution matters between her and her former husband, petitioner, Manheir Chehaiber. Petitioner cross-appeals the trial court's order altering the parties' schedule for visitation with their minor child, Kristian. For the reasons that follow, we affirm the judgment of the trial court.

■ Although we are able to dispose of respondent's arguments in an unpublished portion of this opinion, petitioner's argument on cross-appeal presents an issue for which we see no controlling precedent. In his cross-appeal, petitioner argues that we should vacate the trial court's order modifying visitation, because the order constitutes a restriction on his visitation rights without the statutorily required finding that the restriction was necessary to avoid endangering the parties' child.[1] To support his argument, petitioner invokes section 607(c) of the Illinois Marriage and Dissolution of Marriage Act (Act), which provides as follows:

---

[1] The prior visitation schedule provided that Kristian sleep at petitioner's house on school nights, be driven to school in the morning by petitioner, be picked up from school by respondent, stay with respondent until 7 p.m., and then be picked up by petitioner. The new visitation schedule provided that petitioner would have visitation starting at 7 p.m. on Tuesdays and ending Thursday mornings, and also every other weekend starting from Friday at 7 p.m. until Sunday at 7 p.m. (unless there was no school on Monday, in which case petitioner was to keep Kristian overnight and return him to respondent on Monday at 9 a.m.). This new schedule was largely based on testimony from custody and visitation evaluators that Kristian would benefit from having more extended visitation with each parent.

"The court may modify an order granting or denying visitation rights of a parent whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral[,] or emotional health." 750 ILCS 5/607(c) (West 2008).

Petitioner argues that, when the trial court modified the parties' visitation schedule, it also restricted his visitation, because the modified schedule afforded him less visitation—certainly less overnight visitation—than did the prior schedule. Respondent counters that the trial court only modified petitioner's visitation. The parties thus ask us to interpret section 607(c) of the Act to determine the distinction, if any, between a modification of visitation and a restriction on visitation. In construing a statute, a court's primary goal is to determine the intent of the legislature, and the best indicator of that intent is the plain language of the statute in question. *In re Marriage of Best*, 228 Ill. 2d 107, 116 (2008). If the plain language of a statute is clear, a court must apply it without resort to other aids of construction. *Best*, 228 Ill. 2d at 116.

The plain language of section 607(c) provides no immediate resolution to the parties' dispute. As the above-quoted language indicates, section 607(c) sets out a best-interest-of-the-child standard to govern a court's decision on whether to "modify" visitation, but it requires a showing that the child is endangered for a court to "restrict" visitation. The word "modify" generally means, among other things, "to make more temperate and less extreme" or "to make minor changes in the form or structure of: alter without transforming." Webster's Third New International Dictionary 1452 (1986). As other cases have noted, the word "restrict" generally means " 'to keep within certain limits' " (*Gibson v. Barton*, 118 Ill. App. 3d 576, 580 (1983), quoting Webster's New World Dictionary 1213 (2d Coll. ed. 1976)) or to "limit, restrain, or confine within bounds" (*In re Marriage of Solomon*, 84 Ill. App. 3d 901, 907 (1980), citing Webster's Third New International Dictionary 1937 (1986)). Although there is generally a distinction between these two terms, in the context of an order affecting parties' previously set visitation rights, the terms are, for all practical purposes, synonymous. Any modification of a visitation order will restrict at least one party's visitation in a way it had not previously been restricted, and any new restriction on a party's visitation rights will necessarily constitute a modification of the visitation schedule. However, as respondent argues, it cannot be that the legislature intended the two terms to be coextensive, because it provided a different standard to apply to each action.

Most of the Illinois cases that have considered the distinction between an order to "modify" visitation and an order to "restrict" visitation have cited a litany of examples of restrictions and modifications but stopped short of offering an explanation for why the examples fit one description but not the other. A typical case, *In re Marriage of Lee*, 246 Ill. App. 3d 628 (1993), explains the distinction as follows:

> "A restriction of visitation is an action which limits, restrains, or confines visitation within bounds. A termination of visitation is a restriction, as is a prohibition on overnight visitation. Likewise, a requirement that visitation be supervised, occur in the home of the custodial parent, or outside the home of the noncustodial parent is a restriction. However, eliminating one day from a weekend visitation or shortening a summer visitation due to the activities of the child is not a restriction." *Lee*, 246 Ill. App. 3d at 645, citing *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 504 (1993) (collecting cases).

See also *In re Marriage of Tisckos*, 161 Ill. App. 3d 302, 310 (1987); *Gibson*, 118 Ill. App. 3d at 580. These examples shed some light on the distinction between "modified" and "restricted" visitation, but they do not explicitly state the reasoning behind the distinction. Our applying the above examples without an understanding of the legislature's purpose in drawing the distinction would amount to no better than a blind guess as to whether our application matches the legislative intent. In order to have any confidence that our decision reflects the legislature's intent, we must reach some understanding of the purpose underlying the modify-restrict distinction in section 607(c) of the Act.

That understanding would prove elusive if we were confined to consulting the language of only section 607(c). However, we are not so confined. A court looking to the language of a statute to ascertain legislative intent should evaluate the statute as a whole; the language within each section of a statute must be examined in light of the entire statute. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 387 (1998). When we add the context of the remainder of section 607 of the Act, specifically section 607(a), the legislative intent embodied in section 607(c) begins to emerge.

Section 607(a) of the Act, which governs a court's initial visitation determination, provides as follows, in pertinent part:

> "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health." 750 ILCS 5/607(a) (West 2008).

Section 607(a) thus ensures a noncustodial parent's right to reasonable visitation, "unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health." This quoted language is echoed precisely in section 607(c)'s description of the circumstances under which a court may "restrict" a parent's visitation rights. See 750 ILCS 5/607(c) (West 2008) (court cannot restrict rights "unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health"). We cannot attribute this similarity to coincidence; it must reflect a conscious choice on the part of the legislature to equate the decision to restrict a parent's already-awarded visitation with the decision to deny the parent reasonable visitation in the first place. *Cf. Guillen v. Potomac Insurance Co.*, 203 Ill. 2d 141, 152 (2003) (where the same words appear in different parts of the same statute, they generally should be given the same interpretation).

Indeed, although we find no Illinois cases directly explaining the distinction between the terms "modify" and "restrict" as they are used in section 607(c), many opinions imply that the "restrict" portion of section 607(c) is a specific application of the general rule stated in section 607(a), that the noncustodial parent should be given reasonable visitation unless doing so would endanger the child. See *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 428-29 (1991) (saying that section 607(a) of the Act states "the general rule" for visitation and that "[s]ection 607(c) provides the rule for requests to modify a pre-existing visitation order"); *Crichton v. Crichton*, 75 Ill. App. 3d 326, 328 (1979) (quoting sections 607(a) and 607(c) together); *cf. In re Marriage of Ashby*, 193 Ill. App. 3d 366, 378 (1990) (section 607(c)'s requirement that endangerment be shown before a restriction may be imposed "states a strong public policy designed to preserve the relationship of parent and child"); *In re Marriage of Neat*, 101 Ill. App. 3d 1046, 1048 (1981) (the endangerment standard contained in section 607(a) is deliberately more stringent than the best-interest standard, in order to protect parents' entitlement to visitation).

By placing section 607(c) in the context of the statute as a whole, we can divine that the legislature intended a "restriction" of visitation to denote a decision to limit a noncustodial parent's visitation to something less than the reasonable visitation to which he or she would otherwise be entitled. However, that insight leaves us short of a fully cohesive explanation. Illinois courts have widely held that the test to determine whether visitation is "reasonable" is whether the visitation is in the child's best interests. *E.g., In re Marriage of Seitzinger*, 333

Ill. App. 3d 103, 112 (2002).[2] This leaves us with a quandary. Once visitation endangers a child's welfare, it also ceases to be in the child's best interests, and thus that particular visitation is no longer part of a parent's right to reasonable visitation. A court could grant very little visitation to a noncustodial parent whose visitation endangers a child (or could change a visitation schedule to allow less visitation), based on two different descriptions of the same rationale: the court could say that that particular visitation does not fall within a parent's right to reasonable visitation because it violates the child's best interests, or the court could say that the visitation should not be allowed because it would endanger the child. Which description the court chooses would be very important, because, as we discuss above, a different standard applies to each. This quandary—the idea that whether visitation is reasonable changes with the situation—prevents us from saying that we can discern a "restriction" on visitation from a "modification" by looking at whether the order in question deprives a party of reasonable visitation.

Because we cannot find a clear explanation from the language of the Act itself, we must deem the Act ambiguous on this point and turn to sources extrinsic to the statutory language. See *Millineum Maintenance Management, Inc. v. County of Lake*, 384 Ill. App. 3d 638, 648 (2008) (a court may use extrinsic aids of statutory construction only if the statute is ambiguous). The committee comment to section 407 of the Uniform Marriage and Divorce Act (Uniform Act)—the model statute upon which sections 607(a) and 607(c) are based (see *In re Marriage of Solomon*, 84 Ill. App. 3d 901, 906 (1980))—illustrates the intent underlying the modify-restrict distinction. This comment provides, in pertinent part, as follows:

> "With two important exceptions, this section states the traditional rule for visitation rights. The general rule implies a 'best interest of the child' standard. *** [V]isitation rights should be arranged to an extent and in a fashion which suits the child's interest rather than the interest of either the custodial or noncustodial parent. *** The section does make clear, however, that the judge must hold a hearing and make an extraordinary finding to deprive the noncustodial parent of all visitation rights. To preclude visitation completely, the judge must find that visitation would endanger

[2]This standard predates the legislature's adoption of the Act (see *Hildebrand v. Hildebrand*, 105 Ill. App. 2d 261 (1969)), but, especially in light of Illinois policy that "it is in the best interests of a child to have a healthy and close relationship with both parents" (*In re Marriage of Brady*, 115 Ill. App. 3d 521, 523 (1983)), it seems a rational test to determine whether visitation is "reasonable."

'seriously the child's physical, mental, moral, or emotional health.' *** [This standard] was deliberately chosen to indicate its stringency when compared to the 'best interest' standard traditionally applied to this problem. The special standard was chosen to prevent the denial of visitation to the noncustodial parent on the basis of moral judgments *** which have no relevance ***. The same onerous standard is applicable when the custodial parent tries to have the noncustodial parent's visitation privileges restricted or eliminated." Unif. Marriage & Divorce Act §407 (amended 1973), 9A U.L.A. 398-99, Comment (1998).

Applied to sections 607(a) and 607(c) of the Act, this comment confirms, as we state above, that the right to reasonable visitation in section 607(a) "implies a 'best interest of the child' standard"—that is, a noncustodial parent's right to visitation in the first place is determined by the child's best interests. However, more importantly for our purposes, the comment also clarifies the distinction between modified and restricted visitation by elucidating the reasons underlying the distinction. As the comment explains, the more stringent endangerment standard was created to place a greater burden on a party seeking a reduction in a parent's visitation time where the reduction is based on reasons pertaining to perceived deficiencies of the parent, as opposed to reasons pertaining directly to the child's best interests.

■ Understood in this way, section 607 sets out a very cohesive scheme for setting (section 607(a)) and changing (section 607(c)) visitation. Pursuant to section 607(a), the noncustodial parent is entitled to reasonable visitation, which a court sets based on the child's best interests. The extent that the child's best interests allow the same level of visitation may change, and thus the amount of reasonable visitation to which the noncustodial parent is entitled may change, as circumstances progress; section 607(c) accounts for this by allowing modification of visitation in accord with the child's best interests.

However, this reasonable visitation comes with the limitation (sometimes made explicit by a court order or a parenting agreement, but otherwise stated in section 607(a)) that the child not be exposed to morally or psychologically inappropriate settings or to physical danger. Thus, a party may also seek to reduce a noncustodial parent's visitation, either from the outset, under section 607(a), or after visitation has been set, under section 607(c), because the party believes the noncustodial parent to be unsuited for full visitation. In that case, the reduction in visitation will be a restriction, and the party must show endangerment under section 607(a) or section 607(c).

Put as clearly as we can, then, the difference between a modification and a restriction in section 607(c) is that a modification looks at the child's best interests directly, while a restriction looks at the suitability of the parent whose visitation would be curtailed. The above-cited Illinois cases can be somewhat misleading when they list an array of examples of types of changes that have been deemed "restrictions" or "modifications," because it is not the result—the actual change in visitation—that distinguishes a restriction from a modification; it is the purpose for the change.

Although they do not explain the reasoning they see underlying the modify-restrict distinction, the Illinois cases we cite above appear to reflect our understanding. All of the types of limitations listed in *Lee*—termination of visitation, a ban on unsupervised or overnight visitation, or a ban on visitation at the noncustodial parent's home—will almost certainly be imposed due to unsuitable attributes of the parent whose visitation is limited. To the extent that those limitations are imposed to account for the attributes of one or both of the parents, as is almost certainly the case, those conditions are properly labeled restrictions.[3]

There is, as we say above, some overlap between the concepts of modification and restriction, in both the sense that a modification to a visitation arrangement may also be a restriction and the sense that both types of orders ultimately reflect the child's best interests. (That is, even when a parent's visitation is restricted because the parent is unsuited, the result will protect the child's best interests, and any visitation that endangers a child does not fall within the "reasonable visitation" to which parents are entitled.) However, we need not determine the features that could help identify one type of order or the other where there might be confusion, because there can be no question here that the trial court's order had no basis in any perceived shortcoming in petitioner's parenting skills.[4]

---

[3]However, because, as we say, the purpose behind the change, and not the change itself, dictates its status as a restriction or a modification, it is conceivable that the above types of limitations could be modifications. For example, an order depriving a noncustodial parent of overnight visitation may be either a restriction or a modification, depending on the reasons for its entry. While it is likely that such an order would be motivated by a sense that overnight visitation with the noncustodial parent could endanger the child, the same order could reflect the child's best interests directly if, for example, one parent were appreciably closer to the child's school.

[4]In a case from Colorado interpreting that state's enactment of section 407 of the Uniform Act, the court proposed that a restriction on visitation

Finally, we recognize that our decision puts us at odds with *Gibson*, a case in which the Fourth District stated that it "[could not] escape the conclusion that some difference in the scope of" section 607(a) and the "restrict" portion of section 607(c) "was intended by the legislature." *Gibson*, 118 Ill. App. 3d at 580. The court in *Gibson* considered itself bound to that conclusion because, in its view, if it were to interpret those two clauses similarly, "the [endangerment standard] of section 607(c) would be subsumed within the provision of section 607(a) rendering section 607(c) essentially meaningless." *Gibson*, 118 Ill. App. 3d at 580. Quite to the contrary, under our view, it is essential to the cohesiveness of section 607 as a whole that we interpret the standard for restricting visitation under section 607(c) as identical to the standard for depriving a parent of reasonable visitation under section 607(a). The only difference between the two—and the reason our interpretation does not render section 607(c) essentially meaningless—is that section 607(a) applies to an initial visitation determination, while section 607(c) applies to a change to an already established visitation schedule.

■ Because the trial court's new visitation order was not based on any problem with petitioner, we reject petitioner's assertion that the modified visitation order constituted a restriction on his visitation. We therefore reject his argument that the trial court erred in entering the order without requiring respondent to prove that the prior visitation schedule endangered their son.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

BOWMAN and SCHOSTOK, JJ., concur.

---

could be identified by examining "both the quantitative and the qualitative aspects of the proposed change to parenting time, as well as the reason or reasons advanced for the change." *In re Marriage of West*, 94 P.3d 1248, 1251 (Colo. App. 2004). These factors may be among the many that could conceivably be useful in determining whether a reduction in visitation was motivated by problems with the noncustodial parent.