**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210561-U

Order filed October 21, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| ROSE CECILI RYBKA, n/k/a | ) | Will County, Illinois |
| ROSE CECILI LEACH, | ) | |
| | ) | Appeal No. 3-21-0561 |
| Petitioner-Appellant, | ) | Circuit No. 18-D-143 |
| | ) | 18-D-177 |
| and | ) | |
| | ) | |
| EDWARD JOHN RYBKA, | ) | Honorable |
| | ) | Dinah Lennon Archambeault, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*: Trial court did not err in allocating guardian *ad litem* fees between parents in proceedings on mother's petition to remove minor child.

¶ 2   Petitioner Rose Cecili Leach, f/k/a Rose Cecili Rybka, petitioned to relocate with A.R., a child she shares with respondent Edward John Rybka, and for the appointment of a guardian *ad litem* (GAL). The trial court granted the request for a GAL and denied the petition to relocate.

The court allocated the GAL fees between Rose and Edward. Rose appeals the fee allocation. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4        Rose Leach, and Edward Rybka were married in 2014 and A.R. was born in 2015. The marriage was dissolved in 2019. A parenting agreement was incorporated with the judgment of dissolution and granted Rose and Edward joint decision-making authority and equal parenting time, with Rose being the primary residential parent.

¶ 5        An agreed order entered in August 2020 stated that A.R.

> "shall attend public school(s) in Naperville School District 203, the school district in which MOTHER resides, *** provided, based on MOTHER'S stipulation hereinbelow, that she will remain living within Naperville School District 203 to allow for A.R. to attend Maplebrook Elementary School through completion of fifth (5th) grade[.]"

The order further stated:

> "MOTHER stipulates and agrees that she will remain within Naperville School District 203 to allow for A.R. to attend Maplebrook Elementary School through completion of fifth (5th) grade. Said stipulation shall be consistent with the statutory modification factors set forth in 750 ILCS 5/610.5 as well as 750 ILCS 5/609.2 that, upon a showing of changed circumstances, necessitates modification to serve the best interests of the child AND is not caused by MOTHER's voluntary choice. By way of example, if during the aforesaid period, MOTHER should choose to remarry and decide to relocate to Tennessee to be with her husband, that fact alone will not be deemed a sufficient basis to warrant a modification or relocation premised upon 750 ILCS 5/610.5 and 750 ILCS 5/609.2[.]"

2

¶ 6        In April 2021, Rose filed a notice of relocation and a petition for leave to remove A.R. to Nashville, Tennessee, where her job was headquartered and her fiancé lived. She also sought the appointment of a GAL to investigate whether relocation was in A.R.'s best interests. The trial court appointed the GAL in May 2021 and the appointment order stated: "The initial retainer shall be allocated as follows: EVENLY (50-50) SUBJECT TO REALLOCATION."

¶ 7        The GAL, after finishing his investigation and noting the difficulty of his decision, concluded relocation was in A.R.'s best interest. The parties jointly deposed the GAL. Prior to the start of trial, Edward requested the GAL attend the entirety of the trial in case the evidence presented would alter his decision. The GAL continued his investigation as the trial proceeded, and by agreement of the parties, he was the last witness to testify. Thereafter, the trial court denied the petition to relocate.

¶ 8        A hearing took place on the GAL's fee petition. The GAL's total fee was $29,865. The parties agreed the fees were reasonable and necessary. Rose had already paid $14,038.75 and Edward had paid $11,500. Rose requested an allocation consistent with the parties' incomes, arguing Edward's income was 80% greater. She added that it was Edward who required the GAL's presence at the trial which accrued more fees, further necessitating a greater allocation to him. According to Rose's calculations, the GAL's trial attendance caused at least $10,000 in fees. Rose pointed to her $3000 monthly financial deficit as additional support for a reallocation. Edward argued for a 50%-50% allocation, citing that Rose filed the petition to relocate which resulted in the appointment of the GAL.

¶ 9        The trial court stated that disgorgement did not apply under the circumstances. It noted that Rose had paid $14,038.75, which established she had the ability to pay. The court also noted that Rose travelled regularly back and forth to Tennessee and spent money to do so. The court

3

determined, in part, that because Edward sought the GAL's presence at trial, it would allocate a greater amount than 50% to him. The court ordered Edward to pay the remaining balance of $4326.25, for a total contribution at $15,826.25. Rose appealed the trial court's allocation of attorney fees for the GAL.

¶ 10                                    II. ANALYSIS

¶ 11        Rose argues that the trial court's fee allocation was an abuse of discretion. She submits that the allocation should be proportionate, that Edward earned a larger salary, and that he should be required to pay more of the fees. She further submits that Edward prolonged the trial and required the attendance of the GAL, which substantially increased the GAL fee. According to Rose, the trial court did not recognize it could reallocate a portion of fees Rose had already paid in order to fairly apportion the entirety of the fee.

¶ 12        The trial court may appoint an attorney to serve as a GAL in proceedings involving custody and visitation of a minor child. 750 ILCS 5/506(a)(2) (West 2020). The GAL "shall testify or submit a written report to the court regarding his or her recommendations in accordance with the best interest of the child." *Id.* The GAL may be called to testify for cross-examination purposes regarding his or her report or recommendations. *Id.* The court may enter a fee order when a GAL is appointed. *Id.* § (b). "Any order approving the fees shall require payment by either or both parents ***." *Id.*

¶ 13        In allocating the GAL fees between the parents, the court should consider their financial resources. *In re Marriage of Kennedy*, 94 Ill. App. 3d 537, 549 (1981). Which party precipitated the need for the fees is a factor to be considered. *Gibson v. Barton*, 118 Ill. App. 3d 576, 583 (1983). Other factors include the facts and circumstances of the case; the parents' circumstances; the skill and standing of the GAL; the importance, novelty and difficulty of the issues raised; the

4

degree of management responsibility; time and labor involved; the usual and customary fees in the community; and the benefits to the client. *Id.* at 582-83. This court reviews an allocation of GAL fees for an abuse of discretion. *In re Marriage of Soraparu*, 147 Ill. App. 3d 857, 864 (1986).

¶ 14     We find that the trial court did not abuse its discretion in allocating the GAL fees. In considering the parties' ability to pay, Rose argued that her salary was approximately $77,000 compared to what she estimated was Edward's salary of $350,000. She asks for a proportionate reallocation of the GAL fees. Edward's financial affidavit is not in the record and although his 2020 tax returns indicate an annual income of approximately $350,000, the record does not establish his monthly expenses. Accepting that Edward's monthly income was substantially greater than Rose's income, we reject her proportionality argument. Rose's financial affidavit indicates she had considerable resources, including a recent accounts receivable payment of $56,175. In addition, she had $39,000 in her bank accounts, and received $60,000 in a settlement with her prior employer and 60% of the marital assets, including $88,000 in retirement funds. Although Rose's financial affidavit stated that she had a $3000 per month shortfall, the trial court properly noted that despite her monthly deficit, Rose regularly travelled to Tennessee, spending funds she apparently did not have to do so.

¶ 15     In *In re Marriage of Kramer*, 211 Ill. App. 3d 401, 413 (1991), the trial court allocated half of the fees for the child's attorney to the wife despite the husband's substantially greater income. The reviewing court considered that the lower court properly attributed a substantial part of the proceedings necessitating fees to the wife's conduct. *Id.* Rose, on the other hand, attributes a substantial portion of the GAL's fees to Edward's insistence the GAL attend the trial. We consider his request was reasonable. The GAL completed his report immediately prior to the start of trial and Edward wanted the ability to cross-examine the GAL after the GAL heard the other testimony

in case the GAL changed his opinion. Moreover, the GAL's investigation was extensive and continued throughout the trial, which served to benefit A.R. in the long run. When the trial court asked how much of the fees was attributable to the trial, Rose's counsel, after the court had apportioned the fees, estimated the amount to be $10,000 without offering evidence in support of that figure.

¶ 16   Claims of financial insecurity notwithstanding, Rose did not establish an inability to pay. *In re Marriage of Adams*, 92 Ill. App. 3d 797, 805 (1981) (wife ordered to pay one-half of attorney fees for child representative and her own attorney fees despite her claims of "near destitution"). As the court noted, Rose had already paid nearly half of the GAL's fee, indicating she in fact had the ability to pay. *In re Marriage of Mantei*, 222 Ill. App. 3d 933, 942 (1991) ("[p]etitioner has demonstrated her ability to pay by already having paid about half of the fees"). The GAL was appointed on Rose's motion and in response to her petition to relocate A.R.

¶ 17   Finally, Rose argues that, in rejecting disgorgement, the trial court was unaware it could reallocate the fees by requiring Edward to reimburse Rose for a portion of the GAL fees she already paid. There is no evidence the trial court was stymied by a misapplication of the law. As the court found, disgorgement was inapplicable under the facts as the GAL fees had already been earned. See *In re Marriage of Goesel*, 2017 IL 122046, ¶¶ 14, 35 (disgorgement is "the process whereby a court orders an attorney to turn over previously paid interim fees or retainers" but does not apply to fees already earned). The court found a simple way to require Edward to pay an additional amount by allocating the fee balance due to him. We find there was no error in the trial court's allocation of the GAL fees.

¶ 18                                  III. CONCLUSION

¶ 19   For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 20        Affirmed.