**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240519-U

Order filed August 5, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| SUSAN H.-V., | ) | DuPage County, Illinois. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-24-0519 |
| and | ) | Circuit Nos. 15-D-220, 16-OP-251 |
| | ) | |
| BRYAN V., | ) | |
| | ) | Honorable |
| Respondent-Appellee. | ) | James F. McCluskey, |
| | ) | Judge, presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion in reducing guardian *ad litem* fees for various omissions nor in ordering the appellant to be the sole payor of the fees.

¶ 2    During the parties' marriage, one child, A.V., was born in September 2009. The parents entered into a parenting agreement and allocation judgment during their dissolution proceeding that addressed decision-making, parenting time, and healthcare. The dissolution judgment was

entered in September 2016. After the dissolution, the parents encountered significant parenting disagreements regarding A.V.

¶ 3     Because of their disagreements, the mother filed a motion in August 2019 to suspend the father's parenting time, and the court appointed a new guardian *ad litem* (GAL) for A.V. The GAL actively worked on the case but failed to strictly adhere to the statutes and court orders regarding the filing of fee invoices and reports, eventually resulting in a bar on his opinion testimony at the hearing on parenting allocation amendments. When the GAL later requested payment of fees, the circuit court reduced the amount of his fee request and allocated the entire unpaid balance of payments to the mother. The mother appealed. For the reasons stated below, we affirm the judgment of the trial court.

¶ 4                                                    I. BACKGROUND

¶ 5     Susan and Bryan were married in February 2009. A child, A.V., was born in September 2009. Bryan suffered a traumatic brain injury in a work-related incident in January 2015, the same month that Susan filed for dissolution of marriage in circuit court of Du Page County. Due to his injury, Bryan relocated to Florida, which reduced his daily parental involvement. In April 2015, a GAL was appointed for A.V. The parties entered into a parenting agreement and allocation judgment in March 2016 that provided for shared responsibility in decision-making on education, healthcare, religion, and extracurricular activities. Under the agreement, Susan was to remain in Illinois and be A.V.'s primary residential custodian, while Bryan was granted frequent and liberal visitation to take place in Illinois. A judgment of dissolution was entered in September.

¶ 6     In the years after the dissolution, Brian and A.V. disagreed about what A.V. was permitted to do during Brian's parenting time. In August 2019, Susan filed an emergency motion to suspend Bryan's parenting time. The court subsequently discharged the original GAL and appointed

Umberto Davi as the new GAL, initially ordering each party to pay one-half of Davi's $275 per hour fee. Paragraph 13 of the form order stated that the GAL "[s]hall not make a written report to the Court/ This issue is reserved." Later, on December 20, 2021 (incorrectly shown on the order as December 20, 2022), the court ordered Davi to "issue his opinion and recommendation regarding Bryan's motion to modify in writing at least 14 days prior to the trial," which was then set to start on April 4, 2022. After delays caused by the parties' numerous amended petitions, the hearing was eventually held in July 2023.

¶ 7        Davi was an experienced GAL, having served over one hundred times in both Cook and Du Page counties. After his appointment, he immediately began work by seeking specialized therapeutic counselling for A.V. Davi also met with A.V. and the parents often, although Bryan increasingly withdrew from contact with Davi. Ultimately, the court ordered Bryan to communicate with the GAL, but he did not comply with that order and continued to refuse to speak with Davi.

¶ 8        Over the next three and one-half years, the parties made hundreds of filings, including petitions to amend the parenting agreement, petitions to hold one another in contempt of court, and motions to compel discovery. Although we need not address each of those filings, we note that the sheer volume of material filed by the parties and the contentious nature of the proceedings substantially increased the time Davi expended on the case. Throughout that period, Davi continued his efforts as GAL to work with the parents, schools, and medical providers.

¶ 9        According to the trial court docket, Davi submitted numerous invoices for his services through the end of 2020. Susan's brief inaccurately lists many of those filing dates and the associated page citations in the common law record. For example, her list of invoice filing dates cites an invoice that was filed on July 22, 2020. There is, however, no such filing. In addition,

3

Susan omits other invoice filings shown in the trial court docket, as well as Davi's third petition for payment of GAL fees, which was filed on July 29, 2021.

¶ 10    Davi stopped filing invoices for his services after July 2021. He also never filed a written report with the court, despite the December 20, 2021, order directing him to do so fourteen days before trial.

¶ 11    Prior to trial, Susan disclosed Davi as a testifying witness, but she failed to disclose the content of his proposed testimony. As the hearing date approached, Bryan filed a motion *in limine* seeking to prevent Davi from testifying about or expressing undisclosed opinions if called as a witness. The trial court ruled that Davi could testify to what he had observed while performing his services but could not testify as to his opinions about certain issues nor about potential amendments to the parenting agreement. The exclusion of all specific testimony was to be handled during the hearing on a question-by-question basis.

¶ 12    The hearing lasted from July 10 through July 18. Precisely what occurred in connection with Davi's testimony is unknown. Susan asserts that the Du Page County court reporter's office represented that all proceedings from the hearing had been filed with this court, but our review of the appellate record reveals that any transcripts of counsels' arguments about Davi's testimony, as well as his actual testimony, are missing. In addition, Susan did not prepare a bystander's report or stipulation of facts addressing Davi's testimony. We can, however, ascertain from other documents in the record, including the transcript from the July 2024 hearing on Davi's final request for payment of GAL fees, that he testified at the hearing but was effectively barred from offering any opinions. Adding to the challenges presented by the appellate record, the transcript also omits any testimony by Susan's brother and contains duplicate transcripts of the testimony offered by

4

Bryan, Susan, the court-appointed clinical psychologist, and Bryan's retained expert witness, adding thousands of duplicative pages to the record.

¶ 13        On September 19, 2023, the circuit court issued its ruling on the parties' requests to alter the parenting agreement. In that ruling, the court made some changes to the parenting time allocation and the roles of the parties in decision-making, effectively giving Susan more day-to-day decision-making power, with a handful of exceptions. The ruling also mentioned Davi's failure to file proper invoices and to prepare a pretrial report, but the court did not attribute any part of its ruling to those failures.

¶ 14        Because the court's letter ruling did not discharge Davi, he kept working as GAL. He subsequently submitted invoices for fees going back to July 2021 and filed fourth and fifth petitions for payment. Bryan objected to those fee requests due to Davi's failures to send timely invoices and file a report with the court.

¶ 15        A hearing to adjudicate Davi's fees was held in July 2024. Counsel for both parties declined the opportunity to question Davi. In Davi's sworn statement, he explained that he was an experienced GAL who came into the case about the time that changes in the lawyers and judges occurred and that no one ever asked him about preparing a report. Although he knew a report and fee invoices were required by statute, he did not explain why he failed to prepare a report or why he stopped filing timely invoices.

¶ 16        At the fee hearing, Bryan's counsel argued that Davi acted as the court's witness and had been barred from giving his opinions based on his own failures, denying the court the benefit of his work and opinions. Because Davi's work provided no benefit to the court, Bryan maintained that Davi's work was not reasonable and necessary, and therefore, he should not be paid for work that benefited no one. In contrast, Susan's counsel admitted to the significant role that Davi played

5

in the case even in the absence of a written report. Her counsel pointed out that Davi had testified three times during the course of the proceedings, including during the final hearing, when he was allowed to make specific observations. In her counsel's view, the lack of a written report did not affect the outcome of the case. After a brief conference with Susan, however, her counsel noted that she disagreed with that conclusion and, instead, believed that the absence of a written report was a "significant omission" that impacted the reasonableness and necessity of Davi's work.

¶ 17      The court issued its six-page, single-spaced fee order on July 26, 2024. The order started with an analysis of whether a GAL who was barred offering opinion testimony could receive fees and concluded by finding that Davi could be paid under the specific facts of the case. Addressing Davi's failure to file invoices every 90 days, the court found that it was free to award any fees it found to be reasonable and necessary even though the invoices were late. The court then considered the reasonableness and necessity of Davi's claimed fees. It ruled that any work that occurred after January 2, 2024, was not compensable because no issues were pending at that time. In addition, because Davi failed to prepare a written report, the court declined to award any GAL fees generated from December 20, 2021, through February 28, 2022, and after May 23, 2023, finding that the work did not benefit either A.V. or the court.

¶ 18      In setting the fee award, the court deducted $7,280 from Davi's $31,785 request, resulting in an outstanding fee award of $24,505. The court ordered Susan to pay the full award because she had initially sought appointment of a GAL and had consulted the most with Davi over the course of the dispute. Conversely, Bryan's refusal to cooperate with Davi had little effect on the fees incurred. Susan filed a timely notice of appeal from the GAL fee order. Neither Bryan nor Davi filed an appellate brief.

¶ 19                                    II. ANALYSIS

6

¶ 20 Susan asks that this court vacate the GAL fee award, arguing that the trial court erred in: (1) awarding Davi any fees when he failed to provide the court with any advice, recommendations, or a written report; (2) awarding fees when Davi did not file timely invoices; and (3) allocating the payment of all outstanding GAL fees to her.

¶ 21                    A. Failure to Provide Required Recommendations and Report

¶ 22 The statute authorizing the appointment of GALs and the payment of GAL fees states, in pertinent part:

> "Any person appointed under this Section *shall* file with the court within 90 days of his or her appointment, and every subsequent 90-day period thereafter during the course of his or her representation, a detailed invoice for services rendered with a copy being sent to each party. The court shall review the invoice submitted and approve the fees, if they are reasonable and necessary." (Emphasis added.) 750 ILCS 5/506(b) (West 2024).

Moreover, section 506(a)(2) of the Act provides that "[t]he guardian *ad litem shall* testify or submit a written report to the court regarding his or her recommendations in accordance with the best interests of the child." (Emphasis added.) 750 ILCS 5/506(a)(2) (West 2024).

¶ 23 Susan argues that Davi's violation of the statutory requirements that a GAL file a "detailed invoice" every 90 days throughout the proceedings and a written report containing a recommendation bars him from receiving any GAL fees. She cites no caselaw for this proposition, however, and we have found no relevant precedent.

¶ 24 For Susan's argument to gain any traction, she must show that the word "shall" in the applicable provisions means that compliance with the statutory requirement is mandatory rather than merely directory. In construing a statute, our review is *de novo. In re Estate of Hofer*, 2015 IL App (3d) 140542, ¶ 3.

7

¶ 25    As our supreme court has stated, "Statutes are mandatory if the intent of the legislature dictates a particular consequence for failure to comply with the provision. [Citation.] However, in the absence of such legislative intent the statute is directory, and no particular consequence flows from noncompliance." *In re Rita P.,* 2014 IL 115798, ¶ 43. Applying that guidance here, our task is relatively simple: determine whether the legislature intended the word "shall" in the relevant provisions to be mandatory or directory. A reading of section 506(b) and section 506(a)(2) quickly reveals that neither contains any "particular consequence" for a GAL's failure to submit invoices at regular 90-day intervals or provide the trial court with a written recommendation. 750 ILCS 5/506(b); 750 ILCS 5/560(a)(2). Moreover, nothing in the provisions suggests a legislative intent to punish a GAL who fails to submit timely invoices or a written report. Rather, the GAL provisions were designed to assist both the court and the parties by providing an objective third-party perspective. Thus, we conclude that the legislature's use of the word "shall" in section 506(b) and section 506(a)(2) is directive rather than mandatory and does not preclude an award of fees to the GAL in this case.

¶ 26    Nonetheless, Susan argues that the court should not have awarded GAL fees to Davi under the facts of this case because his work failed to provide any aid to the court or to the parties. In reviewing a trial court's decision to award GAL fees, we apply the abuse of discretion standard of review. *Gibson v. Barton*, 118 Ill. App. 3d 576, 582 (1983).

¶ 27    Susan's argument alleging that the fee award was error relies in part on Davi's claimed failure to provide any recommendations "during Trial or in Preparation for Trial." This open-ended claim ignores her own recitation of two instances in which Davi gave advice about A.V.'s relationship with Bryan. Moreover, the invoices submitted by Davi are filled with conversations that occurred between Susan and Davi, establishing his performance of his duties as GAL. As for

8

Davi's failure to file the report as directed by the trial court, that order specifically tied the report to an April 2022 hearing that was to take place on Bryan's initial motion to modify the allocation judgment. Although that hearing was continued until a later date, the order was not rescinded or updated.

¶ 28    We also note that Susan cannot cite any portions of the record on appeal to support her claim that Davi's work failed to offer any benefit to the court. Indeed, the record addressing Davi's testimony and the parties' arguments at the hearing is far from complete. As the appellant, Susan has the burden to provide this court with a sufficiently complete record to allow us to review her claims of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). If she fails to provide an adequate record on appeal, we must presume that the trial court's decision was correct. *Fantasia v. Wiesch*, 273 Ill. App. 3d 102, 105 (1995). Recognizing the significant problems with the appellate record, Susan claims that she does not know why the court reporters failed to include any record of the argument or Davi's testimony at the hearing. That claim is unpersuasive. Once Susan was aware that critical portions of the trial court record were missing, she could have chosen to prepare a bystander's report or seek a stipulation of facts to support her claims on appeal, but she did neither. See Ill. S. Ct. R. 323 (eff. January 1, 1970). We find that Susan has failed to overcome her burden of establishing that Davi's work as GAL provided no benefit to the trial court or the parties.

¶ 29    Susan next contends that the decision in *In re Marriage of Sopraparu,* 147 Ill. App. 3d 857 (1986), is instructive, citing it for the proposition that it is improper to award fees when a GAL has failed to file a written report as required by the trial court. Unlike the instant cases, however, the GAL in that case submitted no invoices, prepared no written report, and, despite his testimony that he had spent 25 hours or more on the case, failed to offer any evidence of what work he did during

9

those hours. Nonetheless, the trial court awarded him $500 in fees. That award was reversed on appeal, and the cause was remanded to the trial court to determine the value of the services rendered and the charges to be accepted. *Id*. at 865. That decision is readily distinguishable on its facts, which are far different than those in the instant matter. Here, Davi provided the court with sworn invoices detailing the work he performed, and the court already held a hearing to determine the reasonableness and necessity of those charges. The trial court clearly considered the evidence on that work closely because, based on the evidence adduced at that hearing, it deducted over $7000 from the fees requested by Davi.

¶ 30　　　Expressly recognizing that Davi had failed to provide a written report, the trial court declined to award him fees for any work allegedly performed after May 23, 2023. Davi's failure to perform certain duties also caused him to be barred from offering opinion testimony at the hearing on Bryan's third amended modification motion. We note the trial court's ruling was the direct result of a motion filed by Bryan seeking to bar Davi from testifying. Rather than joining that motion or supplementing it with any argument, Susan chose not to object to the very failures by Davi that she now asserts before this court as a reason to vacate his fee award. Indeed, at trial she planned to, and apparently did, rely on Davi to testify as her witness.

¶ 31　　　The trial court's rulings on both Bryan's motion to bar Davi from giving opinion testimony and his subsequent objection to the grant of Davi's fee petitions effectively gave Susan the relief that she requests now for the first time on appeal. Due to Davi's failure to fulfill certain tasks as GAL, the trial court declined to award him with fees for a portion of the work he performed as GAL. In light of the serious limitations present in the trial record, we cannot say that the court abused its sound discretion in granting Davi's request for fees in part.

¶ 32　　　　B. Failure to Show that Fees were Reasonable, Necessary, and Timely Filed

10

¶ 33        Susan next argues that the trial court erred in awarding Davi fees for the time period from December 2020 to July 2024 because he failed to file timely invoices for those dates. Bryan raised that objection at trial, but, at that time, Susan neither joined in his motion nor did she later join in his objection to the payment of those fees at the July 2024 hearing. In fact, her lawyer expressly stated his belief that Davi's work had had a substantial impact on the case. She requests that this court vacate the fee order in its entirety but cites no supporting case law. As previously noted, a trial court's decision to award GAL fees is reviewed for an abuse of discretion. *Gibson*, 118 Ill. App. 3d at 582. An abuse of discretion occurs either when the trial court's ruling is arbitrary or fanciful or when no reasonable person would adopt its view. *Brown v. Illinois State Police*, 2021 IL 126153, ¶ 49.

¶ 34        The record on appeal shows that Davi offered no explanation for his failure to file timely fee invoices every 90 days at the fee hearing, as required by the Act, and the trial court did not question him about the matter. Although Davi did not strictly follow the requirements of section 5/506(b) of the Act for filing invoices, the record supports the finding that he put a large amount of time and effort into his GAL work in this case, professionally addressing the sensitive issues created by the parties' disagreement over how to handle the difficulties faced by their minor child. Davi often met with A.V. and worked with both medical providers and the school. We believe that a reasonable person could readily adopt the trial court's view that Davi's extensive efforts as GAL should not go uncompensated simply due to his failure to request timely payment. Nothing in the relevant statutory provisions bars a fee award for work that was not timely included in a fee invoice, and we conclude that the trial court was entitled to overlook Davi's lapses in timeliness in the interests of fairness. Accordingly, we hold that the trial court did not abuse its discretion in awarding some fees for Davi's GAL services despite his submission of some untimely invoices.

¶ 35    Susan next asserts that the fees awarded were not for reasonable and necessary work because Davi did not provide the court with a written report. In support, she cites to section 1.5 of the Illinois Rules of Professional Conduct, which states in pertinent part: "(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following: * * * (4) the amount involved and the results obtained." Ill. S. Ct. R. 1.5(a) (eff. Jan. 1, 2010). Susan maintains that the purpose of Rule 1.5 is to ensure that lawyers charge fees that are reasonable under the circumstances. Her statement nearly mirrors Comment 1 to Rule 1.5, which states that "[p]aragraph (a) requires that lawyers charge fees that are reasonable under the circumstances." Ill. S. Ct. R. 1.5, Committee Comments (adopted July 1, 2009). Susan does not, however, allege that Davi violated Rule 1.5, only that he must follow its dictates. Her citation to this rule without a specific claim of it contributing to error in the trial court's order adds little to her argument.

¶ 36    We do not accept Susan's assertion that Davi's failure to file a report requested over a year before the actual hearing was held justifies a finding that none of his claimed fees were reasonable and necessary. The hourly rate for his work as GAL was set by the court, which determined it to be reasonable for the work to be performed. Moreover, the judge reduced Davi's fees by nearly one-quarter to exclude work that it deemed was not beneficial to either the child or the court. We conclude that the trial court's determination that Davi's work was both reasonable and necessary was supported by the record and was fully consistent with the appropriate use of its discretion.

¶ 37                        C. Allocation of All Outstanding GAL Fees to Susan

¶ 38    In her third issue on appeal, Susan argues that the trial court abused its discretion by allocating the entire remaining balance of Davi's GAL fee to her for payment. She maintains that

12

the court improperly failed to consider the parties' ability to pay and certain other factors and that it erred in evaluating the conduct of the parties.

¶ 39       An order for the payment of fees and costs is assessed and determined from the specific facts and circumstances of each individual case. *In re Marriage of Brophy*, 96 Ill. App. 3d 1108, 1121-22 (1981). The relevant factors to be considered include (1) the parties' financial resources and relative ability to pay, (2) the attorney's skill and standing, (3) the general nature of the case, (4) the novelty and difficulty of the questions involved, (5) the value and importance of the subject matter, (6) the degree of responsibility undertaken, (7) the usual and customary charges in similar matter, and (8) the benefits achieved for the client. *McClelland v. McClelland*, 231 Ill. App. 3d 214, 228 (1992). When the fees are sought by a GAL, the identity of the party who necessitated the appointment by the trial court may also be a relevant factor. *Gibson*, 118 Ill. App. 3d at 583.

¶ 40       Here, the trial court's allocation of fees first noted the relevance of the parties' financial resources and relative ability to pay. The order did not initially compare the parties' resources, but it later referenced that factor by stating, "As there is evidence that [Susan] was the one that increased the GAL's fees rather than [Bryan] (who chose not to associate with the GAL at all, resulting in the non-accrual of additional fees), it is within the court's discretion to allocate the GAL fees to [Susan] depending on the ability to pay." Although the better practice would have been to explain how the parties' ability to pay supported the chosen allocation, we find more than sufficient evidence in the record to establish that Susan was the more financially stable of the two parties, with a significantly greater income. Further, Susan admits that this was not a simple dispute but addressed significant health-related questions that required the extensive involvement of qualified experts. She even acknowledges that Davi was a capable GAL. To make her point that Bryan should have borne some of the burden for the fees incurred, Susan points out the parties'

13

frequent need to juggle multiple pleadings pending at one time, claiming that over half of those pleadings were filed by Bryan. Notably, Davi was appointed after Susan filed a motion to suspend Bryan's parenting time, which began the parties' long and complicated litigation. The court was undoubtedly aware of those factors when considering the proper fee allocation.

¶ 41 In its allocation order, the court explained that the GAL spent more time working with Susan than he did working with Bryan. Susan claims that this wrongly rewarded Bryan for refusing to cooperate with Davi. The order also noted that it was Susan, not Bryan, who wanted Davi to testify at trial, requiring him to expend time in preparation for trial, while Bryan sought to bar Davi's testimony.

¶ 42 Our review of the trial court's allocation order reveals that, although the trial court considered many of the relevant factors, it placed great emphasis on the value that Davi's efforts added to the proceedings. Largely due to the absence of any record of Davi's hearing testimony, however, we are unable to independently evaluate the import of his participation. Because Susan failed to satisfy her burden as appellant to provide this court with a record sufficient for proper review (see *Foutch*, 99 Ill. 2d at 391-92), we must uphold the trial court's determination that Davi's testimony for Susan offered the trial court valuable insights into the case (see *Fantasia*, 273 Ill. App. 3d at 105).

¶ 43 Overall, the trial court gave sufficient consideration to the relevant factors in allocating payment of the GAL's outstanding fees to Susan. We conclude there was no abuse of that court's discretion.

¶ 44                                    III. CONCLUSION

¶ 45 For the reasons set forth above, the judgment of the circuit court of Du Page County is affirmed.

14

¶ 46　　　　　Affirmed.